N.V. MAATSCHAPPIJ VOOR INDUSTRIELE WAARDEN, Petitioner-Appellee,

v.

A. O. SMITH CORPORATION, Respondent,

and

Armor Elevator Company, Inc., Respondent-Appellant.

Nos. 618 and 681, Dockets 75–7517 and 75–7580.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1975.

Decided April 1, 1976.

William J. Pastore, New York City (Sacks, Montgomery, Molineaux & Pastore, New York City, of counsel), for respondent-appellant.

Ronald J. Offenkrantz, New York City (Kenneth Gliedman and Spitzer & Feldman, P. C., New York City, of counsel), for petitioner-appellee.

Before HAYS, TIMBERS and GUR-FEIN, Circuit Judges.

PER CURIAM:

Respondent-appellant Armor Elevator Company, Inc. (Armor) appeals from two orders of the United States District Court for the Southern District of New York, Dudley B. Bonsal, *Judge,* which directed Armor to arbitrate certain disputes it had with petitioner-appellee N. V. Maatschappij Voor Industriele Waarden (MVIW) arising out of a patent license and know-how agreement, and stayed further proceedings in the District Court pending completion of the arbitration.

The action below was commenced on June 24, 1975, with the filing by MVIW, pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, of a petition to compel arbitration of certain disputes which had arisen between Armor and MVIW concerning a patent license and know-how agreement which had been entered into by the parties on October 1, 1973. MVIW alleged (1) that Armor failed to perform its undertakings, pursuant to the agreement, to manufacture and sell gearless elevators employing the licensed patents and know-how, and that it failed to pay MVIW the royalties set forth in the agreement; (2) that it improperly attempted to disclose confidential know-how to third parties in violation of the agreement; and (3) that it engaged in a conspiracy to keep MVIW's products off the United States and Canadian markets. MVIW prayed that the court order arbitration of these disputes and that it enjoin Armor from disclosing any confidential know-how during the pendency of the arbitration proceedings. In response to this petition, Armor asserted that it had not agreed to submit any of the disputed issues to arbitration. It also counterclaimed for rescission and for damages, asserting that MVIW had not supplied Armor with sufficient know-how to permit Armor to manufacture the licensed elevators and that the patents licensed by MVIW infringed other patents owned by third parties.

In a decision dated July 24, 1975, Judge Bonsal determined that issues (1) and (2) set forth in MVIW's petition were properly subject to arbitration, but that issue (3) was not. By order entered on August 6, 1975, the court directed that Armor proceed to arbitration, and enjoined Armor from disclosure of know-how pending completion of the arbitration.[1]

MVIW moved on August 15, 1975, to dismiss Armor's counterclaims, or, in the alternative, to stay prosecution of the counterclaims pending arbitration.

On September 17, 1975, Armor filed an "Amended Answer, Counterclaim and Cross-Petition," in which it alleged, for the first time, that its agreement with MVIW was invalid because it violated the antitrust laws of the United States and § 340 of the New York General Business Law.[2] Armor asserted that the agreement illegally divided world markets and imposed upon purchasers illegal resale restrictions, and that it improperly forbade disclosure by Armor of certain know-how which was publicly known. Armor also repeated and amplified its claims that the patents licensed in the agreement were invalid and infringed valid patents owned by other parties, and further alleged that MVIW misused its patents and know-how in an attempt to exert monopoly control over the licensed products. Armor asserted that the issues raised in its amended answer were within the exclusive jurisdiction of the court and asked the court to stay the arbitration proceedings pending resolution by the court of these issues.

By order dated October 14, 1975, Judge Bonsal stayed all further proceedings in the District Court until the completion of the arbitration proceedings. In an endorsement to this order, Judge Bonsal stated that the antitrust issues raised by Armor would remain with the court.

Armor appeals from both orders of the District Court, entered on August 6, 1975, and October 14, 1975.

We first must consider whether we have jurisdiction to hear these appeals. It is clear that the order to arbitrate is appealable since it constituted a final judgment in an independent proceeding commenced by a petition to compel arbitration. See 9 Moore, *Federal Practice* ¶ 110.20[4.–1](1); *Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, S.A.,* 243 F.2d 342, 344–

---

1. Judge Bonsal also determined that Armor's parent company, A. O. Smith Corporation, which had guaranteed Armor's obligations under the agreement, could not be compelled to arbitrate. This determination has not been appealed.

2. In its original answer, Armor had merely alleged in general terms that the agreement was "illegal, null and void as an undue restraint on trade and against public policy." No specifications were tendered.

45 (2 Cir. 1957) (Swan, *J.*); *Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc.*, 62 F.2d 1004, 1005 (2 Cir. 1933) (L. Hand, *J.*). As Judge Timbers stated in *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 675 n. 3 (2 Cir. 1972):

"An order compelling arbitration under § 4 of the Federal Arbitration Act is a final order and is appealable under 28 U.S.C. § 1291 (1970). *Hellenic Lines, Ltd. v. Louis Dreyfus Corporation*, 372 F.2d 753, 754 (2 Cir. 1967); *Chatham Shipping Co. v. Fertex S. S. Corp.*, 352 F.2d 291, 294 (2 Cir. 1965)."

Since the order to arbitrate is appealable, the ancillary relief staying the action pending the arbitration is also appealable. As Moore has stated, "once a case is lawfully before a court of appeals, it does not lack power to do what plainly ought to be done." 9 Moore, *supra*, ¶ 110.25[1], at 273; see, e. g., *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1201 (2 Cir. 1970); *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2 Cir. 1967). We therefore turn to the merits.

We find that the District Court properly directed that the first two claims raised by MVIW in its petition be submitted to arbitration. Although the District Court did not specifically consider the question, we agree with appellant that its claims relating to the validity of MVIW's *United States* patents should be determined by the court and are not arbitrable. See *Beckman Instruments, Inc. v. Technical Development Corp.*, 433 F.2d 55, 62–63 (7 Cir. 1970), cert. denied, 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed.2d 326 (1971); *Diematic Manufacturing Corp. v. Packaging Industries, Inc.*, 381 F.Supp. 1057, 1061 (S.D.N.Y.1974), *appeal dismissed*, 516 F.2d 975 (2 Cir.), *cert. denied*, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975).

We disagree, however, with appellant's assertion that the existence of antitrust and patent issues which must be decided by the court inevitably necessitates that arbitration be stayed pending resolution by the court of the nonarbitrable issues. It is true that there is some authority to the effect that where an antitrust defense may conclude the entire matter, it should go forward before the arbitration proceeding. See *Cobb v. Lewis*, 488 F.2d 41, 49–50 (5 Cir. 1974). There the court, however, stressed that the antitrust issues "permeat[ed] the entire case" and had "a reasonable chance of success." Similarly, in *Varo v. Comprehensive Designers, Inc.*, 504 F.2d 1103 (9 Cir. 1974), the court stated that "much of the anti-trust charges tentatively appear vindicated on the surface," and concluded that "the possibility of plaintiffs prevailing on their antitrust counts is so strong that arbitration should be stayed pending the outcome of the legality issues." 504 F.2d at 1104. We ordered arbitration to be stayed pending a court determination of the antitrust issues in *Ring v. Spina*, 148 F.2d 647, 654 (2 Cir. 1945), but only after noting that there was "a showing prima facie of an agreement in restraint of trade." 148 F.2d at 650. See also *American Safety Equipment Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 828 (2 Cir. 1968); cf. *Diematic Manufacturing Corp. v. Packaging Industries, Inc., supra* (arbitration stayed pending resolution by court of patent issues).

On the other hand, where the validity of the antitrust claims was not so clear, courts have refused to stay arbitration pending a decision by the court on the antitrust claims. See *A. & E. Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710, 716 (9 Cir. 1968); *Black v. Econo-Car International, Inc.*, 404 F.Supp. 600 (D.Mass.1975).

Here, the basic antitrust claims relate essentially to an alleged restraint of trade based on territorial restrictions under the doctrine of *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). We cannot say that these claims have been clearly established by appellant. Even if they should eventually be established at trial, it is not clear that the only remedy under the *Schwinn* doctrine would be a rescission of the entire contract. Indeed, the agreement itself contains a severability clause, which provides that "[s]hould any provision of this Agree-

ment be determined to be invalid or unenforceable it shall not affect any or all of the other terms and provisions of this Agreement, which shall continue in force and effect."

Furthermore, appellant failed to raise its antitrust defenses in a timely fashion. These defenses were not raised by appellant until nearly *three months* after MVIW's petition was filed, by which time Judge Bonsal had already granted the petition for arbitration.

With respect to the claims of patent invalidity, we note that appellant, in support of its claims, points to a letter received from Westinghouse Canada Limited, dated April 29, 1975, which indicated that certain patents licensed in the agreement would "probably infringe various Westinghouse patents." This letter, however, was not unsolicited. Rather, it was written in response to a letter sent by Armor to Westinghouse in which Armor indicated that it intended to commence production under these patents, though its actual intention still remains a question of fact. In any event, there is no assurance that a finding of patent invalidity would equitably require rescission of the entire contract. Under the circumstances, we do not believe that the patent invalidity claims are of sufficient magnitude to require that they be decided prior to arbitration.

The combination of factors present in this case—the lateness of the assertion of the antitrust claims, the nature of the antitrust and patent defenses and their likely severability—distinguishes the earlier cases cited and leads to the conclusion that Judge Bonsal was not in error when he allowed the arbitration to proceed first. Accordingly, both orders of Judge Bonsal are affirmed.