**N. V. MAATSCHAPPIJ VOOR INDUSTRIELE WAARDEN,**
Petitioner-Appellee,

v.

**A. O. SMITH CORPORATION and Armor Elevator Company, Inc.,**
Respondents-Appellants.

No. 38, Docket 78–7171.

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1978.

Decided Dec. 8, 1978.

John M. Calimafde, New York City (Francis J. Murphy, Hopgood, Calimafde, Kalil, Blaustein & Lieberman and William Pastore, Sacks, Montgomery, Molineaux & Pastore, New York City, of counsel), for respondents-appellants.

Ronald J. Offenkrantz, New York City (M. James Spitzer, Spitzer & Feldman, P.C., and Paul Fields, McAuley, Fields, Fisher & Goldstein, New York City, of counsel), for petitioner-appellee.

Before FRIENDLY, MULLIGAN and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal from a judgment by the United States District Court for the Southern District of New York, Hon. Dudley B. Bonsal, Judge, confirming an arbitration award of $689,877.75 for breach of a patent and "know-how" license agreement, after trial on a stipulation of an issue assumed to have been reserved for the District Court in a former opinion of this court, 532 F.2d 874, 876 (1976). Appellants, A. O. Smith Corp. and its former subsidiary, Armor Elevator Co. (referred to collectively as "Armor"),[1] challenged the award in the District Court on the ground that the technical information conveyed under the agreement infringes valid patents held by third parties in the United States and Canada. On appeal, appellants contend that they were denied a fair trial on this issue because of erroneous evidentiary rulings and an overly hasty conclusion of the trial.

During the period relevant to this controversy, both Armor and the appellee ("MVIW") were engaged in the elevator manufacturing business—appellant in the United States and appellee principally in Australia.[2] During 1972–73 the parties entered into negotiations that culminated in

---

1. Armor Elevator Co. was licensee under the agreement. There is no dispute over A. O. Smith Corp.'s joint liability for any breach of the agreement by Armor.

2. Since this litigation commenced, A. O. Smith Corp. has sold the assets of its elevator subsidiary, and Armor Elevator Co. has been replaced as a respondent by the remaining corporate shell, 3533 Elevator Co.

the license agreement presently involved. By this document MVIW agreed to provide Armor with patents and "know-how" necessary for manufacture of gearless elevators in return for certain royalty payments. A dispute arose over the adequacy of the know-how tendered by appellee and whether it would infringe certain patents held by a stranger, Westinghouse Corp. and its Canadian subsidiary, Westinghouse of Canada, Ltd. Appellant Armor refused to pay further royalties, and MVIW, claiming breach of contract, brought an action to compel arbitration under 9 U.S.C. § 4.

In the first round of litigation, Judge Bonsal granted MVIW's petition for arbitration and this court affirmed. 532 F.2d 874 (2d Cir. 1976). In affirming Judge Bonsal's order, however, we reserved for District Court decision—*following* arbitration —Armor's affirmative defenses alleging antitrust violations and challenging "the validity of MVIW's *United States* patents." *Id.* at 876 (emphasis in original). Arbitration proceeded forthwith. Appellant there contended that a letter solicited by Armor from a Mr. Robert Fox of Westinghouse of Canada, Ltd. was a "claim of infringement" which triggered certain contractual remedies. The arbitrators held that the letter, which stated that a *patent* conveyed to Armor as part of the know-how "probably infringe[d]" one of Westinghouse's Canadian patents, was not a "claim" of infringement. Appellant also contended that the know-how conveyed to Armor was inadequate. The arbitrators held that the defect in know-how was not so material as to constitute a breach. The arbitrators concluded that Armor's refusal to pay minimum royalties did breach the agreement, and that MVIW was entitled to $689,877.75 in damages. After the arbitration award, the case was returned to Judge Bonsal.

The parties entered into a stipulation of issues before trial which is relevant to the disposition of this appeal. Armor agreed to dismiss, with prejudice, several of the affirmative defenses and counterclaims in its answer and amended answer.[3] The withdrawn claims comprised all of Armor's antitrust claims, as well as its challenges to the *validity* of the MVIW *patents.* In place of the withdrawn claims, the parties stipulated that there were two issues to be tried:

1) "[T]he assertion by Armor that MVIW conveyed to Armor technical information which infringe[s] patents of other persons in force in the United States and Canada;"

2) "[T]he assertion by Armor that MVIW knowingly conveyed to Armor technical information which infringe[s] patents of another . . . ."

These contentions and their effect, if any, on the license agreement were, by the terms of the stipulation, the sole matters to be determined at trial.[4]

Before reviewing appellants' contentions concerning Judge Bonsal's handling of the trial, we pause to identify with some care what was and was not before the court. First, it is clear that Armor was not free to relitigate issues that had been decided by the arbitrators, in particular the question of whether it had received a "claim" of infringement from Westinghouse. *Saxis S.S. Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577, 581–82 (2d Cir. 1967). Second, by withdrawing its allegations of patent *invalidity,* we think that Armor gave up any claim that the *patents* underlying the license agreement would infringe on prior valid patents owned by third parties. What remained to be determined at trial was only

---

**3.** Armor withdrew the first, second, and third affirmative defenses in its answer and counterclaim dated June 30, 1975, as well as the first, second, and third amended counterclaims in its amended answer and counterclaim dated September 16, 1975.

**4.** In addition to the stipulated issues, MVIW also moved for a summary judgment confirming the award. It contended that the decision of the arbitrators left nothing for the court to

decide, and that Armor should be estopped from alleging the invalidity of the license agreement. These issues were also reargued on appeal, although MVIW did not file a cross-appeal from Judge Bonsal's disposition on the merits of the infringement issue. Given our disposition of this case, we need not consider MVIW's contention that the questions reserved for trial need never have been reached.

**418**

whether the "technical *information*" (emphasis added) conveyed by MVIW—the know-how—infringed on other patents. To put the matter in slightly different terms, even though MVIW's patents were valid, it remained a possibility that its exploitation of the patents in the form of technical know-how itself went beyond the scope of the patent monopoly and infringed on other patents in the elevator art. It is evident in the record that this distinction between patent and know-how was not carefully maintained by either party during the trial, but on appeal we regard it as our duty in assessing possible prejudice from excluded testimony to keep the difference between the withdrawn claim of patent invalidity and the claim of infringement by know-how firmly in mind.

■ Armor asserts three instances of prejudicial error in the trial below. Only two have been seriously pressed.[5] Armor presented several "expert" witnesses to testify that in their opinion MVIW's United States Patent No. 3,777,855 (the "MVIW patent"), infringed Westinghouse's United States Patent No. 3,589,474 (the "Westinghouse patent"). Armor also presented as an expert witness Mr. Robert Fox, the Canadian patent agent whose letters to Armor had been a major subject of litigation before the arbitrators. Evidently, Mr. Fox was to testify concerning his opinion that the Canadian equivalent of MVIW's United States Patent would also infringe the Westinghouse patent's Canadian counterpart. Mr. Fox was prevented from testifying about

his opinion of "probable infringement", which he had expressed in his letter to Armor. The court refused to qualify him as an expert because Fox, who was not a patent lawyer, testified that he was not qualified under Canadian law to render an opinion concerning infringement in a Canadian court. Armor contends that Fox's testimony should not have been excluded and that the exclusion was prejudicial error.

Armor is correct that Fox did qualify as an expert in the federal court. But we do not agree that the error was prejudicial. Though Fox's qualifications as an expert on infringement were satisfactory, his testimony could have been excluded in any event on grounds of relevance.

■ The qualification of expert witnesses is governed by Federal Rule of Evidence 702. Although the Advisory Committee's Note indicates that Rule 702 broadens the range of admissible expert testimony, the Rule does not alter the well-established principle that assessment of an expert's qualifications lies within the sound discretion of the trial court, which may not be disturbed unless " 'manifestly erroneous.' " *Fernandez v. Chios Shipping Co.*, 542 F.2d 145, 153 (2d Cir. 1976); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[01]–[02] (1978); *see* 7 J. Wigmore, *Evidence* §§ 1918, 1923 (3d ed. 1940). Armor attempts to meet the heavy burden imposed by this rule by arguing that the court looked to labels rather than to experience in determining Fox's qualifications. Since it was established that Fox was a patent agent with

---

5. In addition to the two issues to be discussed in text, Armor asserts that it was denied a fair trial when the District Court refused to grant a recess on the last day of testimony. The recess was requested because Armor's chief counsel was snowbound in a blizzard. Although we think that such a recess may well have been in order, we do not subscribe to Armor's exaggeration of this incident into a matter of great prejudice. Armor was represented that day by another attorney who was not unfamiliar with the case. There were only two witnesses to be examined. One, called by MVIW (whose chief counsel was also absent because of the weather), gave only brief and non-technical testimony that left little scope for cross-examination. The second witness, whom MVIW decided not

to call, was called by the court. Neither witness's testimony was crucial to the case. Moreover, the trial court's desire to expedite their examination was not wholly unwarranted. Both witnesses were from Australia and had apparently come to the United States solely to testify. A recess would have perpetuated their stay, causing expense and delay which, particularly in light of the weather conditions, might have cost substantial hardship. Finally, we note that the request for a delay by Armor's attorney was rather tentative and precatory. There was nothing in the request to inform the trial judge of the view now advanced that an expeditious conclusion of the testimony would seriously harm Armor's case.

considerable experience in the elevator art, Armor urges that neither his lack of formal training in patent law nor his incompetency to testify in Canadian courts should have barred him from rendering an opinion on infringement. We agree.

██ Judges are seldom masters of intricate mechanics or engineering. Accordingly, in patent cases, they must often rely on expert testimony to assist them in understanding the disclosures of a patent, the operation of allegedly infringing devices, and the teachings of prior art. *Black, Sivalls & Bryson, Inc. v. National Tank Co.,* 445 F.2d 922, 926–27 (10th Cir. 1971); *see Forbro Design Corp. v. Raytheon Co.,* 532 F.2d 758, 762 (1st Cir. 1976). As in other fields where expert testimony is of vital significance, the opinions of patent experts must often be formulated in conclusory terms that make reference to legal concepts or touch on central issues in the case. *Black, Sivalls & Bryson, Inc. v. National Tank Co., supra* at 926; *see* Fed.R.Evid. 704; 3 *Weinstein's Evidence, supra,* ¶ 704[01]. Nonetheless, the proper focus of expert testimony is technical, rather than legal, *see Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 509–10 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977), so that Fox's lack of legal training should not have been an impediment to his giving testimony.

These basic principles are not altered in the present case by the fact that Fox proffered testimony on infringement of a foreign patent, or that he would be disqualified from testimony on infringement in a Canadian court. Foreign patent experts are free to testify before American federal courts, despite any disqualification before the courts of their home country, so long as their credentials satisfy the standards for qualification set in Rule 702.

Although we conclude that the District Court excluded Fox's testimony for an improper reason, we nonetheless do not find ourselves constrained to reverse. Appellant made an offer of proof respecting Fox's proposed testimony. That offer failed, in our view, either to meet the test of relevance or to charge the judge with an erroneous ruling. In laying a foundation for Fox's opinion, counsel for Armor elicited testimony that Fox had examined only *patents* conveyed to Armor by MVIW. His letter of February 26, 1975, stating that the MVIW patents would "probably infringe" Westinghouse patents was also admitted, over objection. When counsel for Armor began to question Fox on his opinion, objection was again raised. In the ensuing *voir dire* of the witness, Armor's counsel made the following offer of proof:

> If Mr. Fox, your Honor, were permitted to testify in regard to the letter . . . he would testify that although he used the word "probably" in the letter, he used it because he had examined only the MVIW patent and that there was no doubt in his mind from an examination of the Westinghouse patent and the system disclosed in the MVIW patent that such a system, if made, would be a clear infringement of the Westinghouse patent.
>
> Now, the use of the word "probably" was because of [sic] the system wasn't in existence.

This offer clearly shows, first, that the major purpose of Mr. Fox's testimony would be to explain his state of mind at the time of his letter, and second, that the testimony would concern only the infringement of one *patent* by the claims of another. As we have noted, *neither* of these matters remained as proper issues. What Fox, speaking for Westinghouse, meant in his letter by saying that there was probable infringement may have been relevant to the question of whether the statement was a claim of infringement, but that issue had already been decided by the arbitrators.[6] More fun-

---

6. Armor's reliance on *Charles Pfizer & Co. v. FTC,* 401 F.2d 574, 584 (6th Cir. 1968), *cert. denied,* 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969), incorrectly interprets the status of the infringement letter. In *Pfizer,* the court permitted an expert witness in a case involving charges of patent fraud to explain records he made at the time the patent application was being processed. The witness, unlike Fox, lacked present knowledge of the matters to

damentally, Fox, by his own admission, had studied only the MVIW patents and *not* the know-how. He was not prepared to testify on whether the *know-how* infringed the Westinghouse patents. Thus, his testimony would have failed an essential condition for admissibility: it would not "assist the trier of fact" in making any determination he was called upon to make. Fed.R.Evid. 702. *See Jacobson v. Leonard,* 406 F.Supp. 515, 520 (E.D.Pa.), *modified mem.,* 546 F.2d 417 (3d Cir. 1976).

Even if we assume that Fox's testimony was relevant to issues at trial, we agree with Judge Bonsal that he would, at best, have been a weak witness. Other expert witnesses had already testified as to infringement, so that Fox's testimony would have been cumulative.

Armor contends also that Judge Bonsal committed error when he restricted the cross-examination of MVIW's key witness, Mr. George Whitney. Whitney, a patent lawyer with considerable experience in the elevator art, testified on direct examination that in his opinion the MVIW "system" did not infringe the Westinghouse patent.[7] To explain his opinion, Whitney compared the floor selector systems disclosed by Westinghouse and MVIW. Both operated by feeding electric pulses into a "register" or "counter", which could compute from the number of pulses the position of the elevator car relative to its final destination, and which on the basis of that information automatically controlled the acceleration or de-celeration of the car. The key difference between the two systems, Whitney testified, lay in the method of generating the electric pulses. Under claim 18 of the Westinghouse patent, which Whitney insisted must be construed according to the patent specifications, pulses were generated during movement of the car. This enabled the floor selector to adjust the destination of the car when it received calls from intervening floors. By contrast, according to Whitney, the MVIW system generated electric pulses prior to as well as during movement. The pulses generated prior to movement would "pre-load" the register, with the result that the initial call would fix the first destination, or at least limit the number of intervening calls to which the elevator would respond.[8] The MVIW system would thus serve elevator passengers in an order different from the Westinghouse system.

On cross-examination, counsel for Armor attempted to challenge Whitney's testimony by reading phrase by phrase through Westinghouse claim 18 and asking Whitney whether the terms of the claim literally corresponded to elements in the MVIW system. Whitney admitted some literal correspondence, but he resisted the entire line of questioning by repeatedly protesting that the terms of claim 18 could only be understood in the context of the specifications and that, so understood, they did not correspond to the MVIW system. After a few rounds of this debate, the court sustained

which he testified, and the documents on which he relied were themselves directly related to events at issue in the trial. By contrast, in this case, Fox's letter was no longer of any independent significance, and there was no showing that Fox was unable to testify from personal recollection concerning the infringement issue.

7. Whitney, like Fox, appears not to have examined MVIW's know-how before rendering his opinion. Armor, however, did not object to his testimony on this ground, nor was this problem raised on appeal. Although Armor does claim that Whitney's testimony engaged in an impermissible comparison between *systems* rather than patents, we think this is nothing more than an attempt to seize on a verbal slip. Reference to the MVIW "system", of course, was not only permissible but necessary. And there

is nothing in the record to indicate that when Whitney discussed the Westinghouse "system" he was referring to anything other than the teaching of the patent. We do not have a case where the Westinghouse patent was limited to a single commercial embodiment or "mode". *Compare MacLaren v. B–I–W Group, Inc.,* 535 F.2d 1367, 1373 (2d Cir.), *cert. denied,* 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 612 (1976); *CTS Corp. v. Piher International Corp.,* 527 F.2d 95, 100 (7th Cir. 1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976).

8. Whitney's explanation of the difference between the two systems, undoubtedly more accurate than ours, may be found in the Appendix at 667–72.

an objection to the entire line of questioning.

Although cross-examination is an essential element of our system of adversarial advocacy, the proper scope for cross-questioning is, like the qualification of witnesses, a matter of trial court discretion which we do not lightly disturb. *United States v. Green,* 523 F.2d 229, 237 (2d Cir. 1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976); *United States v. Kahn,* 472 F.2d 272, 281 (2d Cir.), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). Nonetheless, unduly harsh limitation on cross-examination of a key expert witness can amount to prejudicial error. *See Wiseman v. Sinclair Refining Co.,* 290 F.2d 818, 819–20 (2d Cir.), *cert. denied,* 368 U.S. 837, 82 S.Ct. 63, 7 L.Ed.2d 37 (1961). Armor finds abuse of discretion in this case because it asserts that the excluded questions were necessary both to establish the basis for Whitney's "conclusory" opinions and to prove their error. *See* Fed.R.Evid. 705.

We find no manifest error in Judge Bonsal's contrary determination. Armor's attempt at cross-examination was not properly an attempt to elicit the "basis" of Whitney's testimony. Whitney explicitly testified on direct examination that his opinion was *based* on a reading of the claims and the specifications together. It is evident that Armor questioned Whitney's assumption that the specifications were relevant, but this disagreement was on a point of law, which could be argued separately to the judge, and which was not a proper subject for witness testimony. *Marx & Co. v. Diners' Club, Inc., supra,* 550 F.2d at 509–10. Moreover, the *fact* that there was a literal correspondence—if it was a fact—could easily be determined by the Judge himself. Protracted questioning could thus properly be limited under Rule 403 as a waste of time.

Although Armor has not directly challenged Judge Bonsal's decision on the merits of this case, it is part of Armor's argument that the court's refusal to permit further questioning on the literal correspondence of terms reveals a misapprehension by the court of the legal standards to be applied. We think, on the contrary, that Armor's understanding of the law is in error. The "doctrine of equivalents" which governs determinations of infringement requires an assessment of function rather than form in measuring the claims of a patent. As this court said in *Triax Co. v. Hartman Metal Fabricators, Inc.,* 479 F.2d 951, 958 (2d Cir.), *cert. denied,* 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 740 (1973): "The broadly stated test, enunciated in *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), quoting *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 (1929), is whether the challenged device 'performs substantially the same function in substantially the same way to obtain the same result' as the challenging device." In a crowded field such as the elevator art, a literal correspondence of terms may be a starting point for analysis, *Decca Ltd. v. United States,* 420 F.2d 1010, 1013–14, 190 Ct.Cl. 454, *cert. denied,* 400 U.S. 865, 91 S.Ct. 102, 27 L.Ed.2d 104 (1970) *see Graver Tank & Mfg. Co. v. Linde Air Products Co., supra,* 339 U.S. at 607, 70 S.Ct. 854, but "[m]ere application of claim phraseology or a word-by-word correspondence is not by itself enough to establish infringement." 7 Deller's Walker on Patents § 511 at 174 (2d ed. 1972) (footnote omitted). And although it is the claim alone which determines the scope of a patent monopoly, claims which are not free from ambiguity may not be interpreted solely according to their "dictionary" meaning, but must be interpreted by reference to the "art or technology to which the claimed subject matter pertains." *Application of Salem,* 553 F.2d 676, 682–83 (Cust. & Pat. App. 1977). For that purpose, a court is not precluded from consulting the specifications. *MacLaren v. B–I–W Group, Inc., supra,* 535 F.2d at 1372.

In the light of these principles, Armor stood to gain very little, if anything, by its planned line of cross-examination. The judge, who had heard testimony on literal

correspondence before, did not abuse his discretion by cutting short an inquiry that would not assist him in his factfinding role.

Because we find no prejudicial error in the conduct of the trial below, we hold that appellants have not been deprived a "full and fair" hearing on the issues submitted to the court. The judgment confirming the arbitration award is affirmed.