712 F.2d 724
 HARTFORD FINANCIAL SYSTEMS, INC., et al., Plaintiffs, Appellants,
v.
FLORIDA SOFTWARE SERVICES, INC., et al., Defendants, Appellees.
HARTFORD FINANCIAL SYSTEMS, INC., et al., Plaintiffs, Appellees,
v.
FLORIDA SOFTWARE SERVICES, INC., et al., Defendants, Appellees.
Florida Computer Services, Inc., Defendant, Appellant.
 Nos. 82-1946, 82-1947.
 United States Court of Appeals,
First Circuit.
 Argued May 5, 1983.
Decided July 26, 1983.
 
 Lawrence H. Neville, Atlanta, Ga., with whom Timothy R. Askew, Jr., Arnall, Golden & Gregory, Atlanta, Ga., William J. Kayatta, Jr., and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Maine, were on brief, for Florida Computer Services, Inc.
 James Donnelly, Jr., Boston, Mass., for Hartford Financial Systems, Inc., et al.
 Zachary R. Karol, Boston, Mass., with whom John J. Curtin, Jr., Robert L. Ciociola, Bingham, Dana & Gould, Boston, Mass., Joseph B. Campbell, Frank G. Chapman, and Locke, Campbell & Chapman, Augusta, Maine, were on brief, for Depositors Trust Co.
 Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and RE,* Chief Judge.
 BREYER, Circuit Judge.
 
 
 1
 This case involves an arbitration order in a contract dispute between a Partnership and the Depositors Trust Co. Hartford Financial Systems, Inc. (Hartford) and Martin Marietta Corp. (Martin) were the original partners; they arranged for the Partnership to contract to supply data processing services to Depositors. Through a series of transactions, they reorganized the Partnership to include Florida Computer Services, Inc. (FCS); eventually, they transferred over 99 percent of the Partnership to FCS. When the Partnership began to send Depositors invoices for additional expenses incurred in the course of performing its duties under the Partnership/Depositors Contract, Depositors cried "breach." It claimed that the Partnership was trying to increase its prices, and that Hartford and Martin were trying to avoid their contractual responsibilities. Depositors then refused to pay the invoices; the Partnership declared Depositors in default and the Partnership "terminated" the contract. Depositors contracted for substitute data processing services and began to prepare for the arbitration of the Partnership/Depositors Contract dispute. Hartford and Martin, however, refused arbitration. They sued Depositors to prevent it from obtaining substitute performance, and they sued FCS to force it to perform the terms of the Contract with Depositors. They also sought a general declaration of contractual rights and responsibilities. At Depositors' request, the federal district court, 550 F.Supp. 1079 (1982), acting under the authority of the Federal Arbitration Act, stayed the suit and ordered the parties to arbitrate their "breach of contract" and related damages disputes. 9 U.S.C. §§ 3, 4. Hartford and Martin appeal, arguing that the contract allows the district court to send the Partnership but not the individual partners to arbitration.
 
 
 2
 We do not reach the somewhat metaphysical question that appellants seek to raise, for we lack jurisdiction over their appeal. The jurisdictional statutes relevant to this case allow an appeal only if an order is "final," 28 U.S.C. § 1291, or if it grants or denies an "injunction," 28 U.S.C. § 1292(a)(1). There are no special features here that bring into play the "collateral order" doctrine, Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), or that make the district court's action something other than what it seems--namely, an ordinary postponement of court action pending arbitration. Cf., e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp., --- U.S. ----, ----, 103 S.Ct. 927, 933, 74 L.Ed.2d 765 (1983) (appeal allowed if plaintiff is "effectively out of court"); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 n. 2, 82 S.Ct. 1294, 1296 n. 2, 8 L.Ed.2d 794 (1962) (per curiam ) (same); Acton Corp. v. Borden, Inc., 670 F.2d 377, 381 (1st Cir.1982) (appeal allowed if orders "effectively terminate the actions in which they are granted," or if they "deprive[ ] the federal plaintiff of any opportunity to have his claim heard on the merits"); Dellinger v. Mitchell, 442 F.2d 782, 789 (D.C.Cir.1971) (order not appealable where stay is "not so indefinite as to be the practical equivalent of a dismissal"). Under these circumstances, appealability is determined by the arcane but detailed set of rules applying the "appealability" provisions of §§ 1291 and 1292 to §§ 3 and 4 of the Arbitration Act.
 
 
 3
 * Section 3 of the Arbitration Act requires a court upon request to stay its proceeding "upon any issue referable to arbitration ... until such arbitration has been had...." 9 U.S.C. § 3. A stay issued under this section, like other stays, is normally not appealable for it is neither 'final' nor an 'injunction.' See, e.g., Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955) (stay generally not an injunction); Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 456, 55 S.Ct. 475, 476, 79 L.Ed. 989 (1935) (stay not final); Langley v. Colonial Leasing Co. of New England, 707 F.2d 1, 3 (1st Cir.1983) ("the denial of motion or petition for stay pending arbitration under 9 U.S.C. § 3 is not appealable as a 'final judgment' "); Standard Chlorine of Delaware, Inc. v. Leonard, 384 F.2d 304, 306-07 (2d Cir.1967) (stay not final); Alexander v. Pacific Maritime Association, 332 F.2d 266, 267 (9th Cir.) (same), cert. denied, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964). There is, however, a crucial exception: Long ago, the Supreme Court held that if the suit stayed pending arbitration is legal in nature rather than equitable, then the stay order is appealable under § 1292(a)(1). The Court reasoned that, in the days before law and equity were merged, a defendant to a legal action wishing to enforce an arbitration clause could have obtained a stay only by asking the Chancellor in Equity for an injunction restraining the legal proceedings. Cf. E. Re, Remedies 46 (1982). Thus, a modern order staying an underlying "legal" claim pending arbitration is the analogue of the ancient injunction that would have been issued by the Court of Equity against the legal suit; as an "injunction," it is appealable. Since the Chancellor in Equity would not have needed to issue an injunction to stay his own proceedings, however, a stay of equitable proceedings is not an "injunction." Therefore, such a stay is not appealable. See, e.g., Ettelson v. Metropolitan Life Insurance Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); Enelow v. New York Life Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); Langley v. Colonial Leasing Co. of New England, 707 F.2d at 2 & n. 2; USM Corp. v. GKN Fasteners, Ltd., 574 F.2d 17, 21-23 (1st Cir.1978); Warren Brothers Co. v. Cardi Corp., 471 F.2d 1304, 1306 (1st Cir.1973); New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d 183, 187 (1st Cir.1972); Hilti, Inc. v. Oldach, 392 F.2d 368, 369 n. 1 (1st Cir.1968). Despite its anomalous nature, this "Enelow-Ettelson exception" is so well-entrenched in the law that only Congress or the Supreme Court can remove it.
 
 
 4
 This case does not fit within the Enelow-Ettelson exception, for the underlying claim here is "equitable" rather than "legal." The plaintiffs in this case initially asked for injunctions prohibiting Depositors from seeking computer services elsewhere and requiring FCS to provide Depositors with those services. The plaintiffs also sought declaratory judgment--a chameleon-like statutory remedy which is neither "legal" nor "equitable." See, e.g., American Safety Equipment Corp. v. J.P. Maguire & Co., 391 F.2d 821, 824 (2d Cir.1968); Hargrove v. American Century Insurance Co., 125 F.2d 225, 228 (10th Cir.1942); Pacific Indemnity Co. v. McDonald, 107 F.2d 446, 448 (9th Cir.1939); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2769 (1983). Some courts have tried to characterize a suit for declaratory judgment as legal or equitable by asking about the nature of the suit that "would have been brought" were declaratory relief not available. See, e.g., Diematic Manufacturing Corp. v. Packaging Industries, Inc., 516 F.2d 975, 978 (2d Cir.), cert. denied, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975); Wallace v. Norman Industries, Inc., 467 F.2d 824, 827 (5th Cir.1972); American Safety Equipment Corp. v. J.P. Maguire & Co., 391 F.2d at 824. But we shall not. Rather, we shall assume, for the sake of argument, that the declaratory judgment claim in this case is "legal;" it raises damage-oriented contract questions. Regardless, the injunctive claims in the complaint are plainly equitable, see E. Re, supra, at 2-3; and their presence means that we must consider this suit to be equitable for Enelow-Ettelson purposes. See, e.g., USM Corp. v. GKN Fasteners, Ltd., 574 F.2d at 21-22; 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice & Procedure § 3923 (1977).
 
 
 5
 Hartford argues that its injunctive claims have become moot. But, that is beside the point. By the late nineteenth century, if equitable and legal claims were joined in an equity proceeding, the fact that the equitable claims became moot in the course of the litigation did not deprive the equity court of jurisdiction. To the contrary, the treatises of Justice Story and Professor Pomeroy indicate that in such circumstances the equity court retained jurisdiction over the legal claims and granted purely legal relief, in order to save the parties the time and expense of beginning a new proceeding in another court. 1 J. Pomeroy, A Treatise on Equity Jurisprudence §§ 231, 237 & n. 3 (3d ed. 1905); 2 J. Story, Commentaries on Equity Jurisprudence § 796 n. a (13th ed. 1886); accord, E. Re, supra, at 52 & n. 53; see, e.g., County of Mobile v. Kimball, 102 U.S. 691, 706-07, 26 L.Ed. 238 (1880).
 
 
 6
 We advance no further into this Serbonian Bog, where cases whole have sunk from sight. There are obvious limits to our ability to explore the hypothetical reaction of an ancient court (of equity) to a proceeding that combines moot requests for an injunction with a new form of (declaratory) action--an anachronism wrapped up in an atavism, so to speak. Rather, we simply associate ourselves with those courts that have recognized the anomalous nature of the Enelow-Ettelson exception to the normal rule that stay orders are nonappealable. As a result, we apply the Enelow-Ettelson rule "with an eye toward a finding of nonappealability," Mellon Bank v. Pritchard-Keang Nam Corp., 651 F.2d 1244, 1249 (8th Cir.1981), and resolve "any fair doubt ... against the claim that the action was predominantly one at law," Schine v. Schine, 367 F.2d 685, 688 (2d Cir.1966) (Friendly, J., concurring). See also, e.g., Lee v. Ply*Gem Industries, Inc., 593 F.2d 1266, 1269 (D.C.Cir.), cert. denied, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); United States v. American Institute of Real Estate Appraisers, 590 F.2d 242, 245 (7th Cir.1978); USM Corp. v. GKN Fasteners, Ltd., 574 F.2d at 22; Stateside Machinery Co. v. Alperin, 526 F.2d 480, 484-85 (3d Cir.1975); Danford v. Schwabacher, 488 F.2d 454, 457 (9th Cir.1973). We conclude that the § 3 stay order, being a stay of an "equitable" action pending arbitration, is not appealable.B
 
 
 7
 The district court also granted Depositors' motion under § 4 of the Arbitration Act, which provides that:
 
 
 8
 A party aggrieved by the alleged failure ... of another to arbitrate ... may petition any United States district court ... for an order directing that ... arbitration proceed....
 
 
 9
 9 U.S.C. § 4. Normally, such motions are brought in independent proceedings. After all, when a plaintiff sues on a contract in court, he likely does not want arbitration, and the defendant may well be content to obtain a § 3 stay and leave it to the plaintiff to seek recovery in arbitration. But, in some instances, such as the one before us, the defendant wants both a § 3 stay and a § 4 order compelling arbitration. When § 4 motions are made in independent proceedings, the resulting order is universally conceded to be "final" and appealable. See, e.g., Langley v. Colonial Leasing Co. of New England, 707 F.2d at 4; N.V. Maatschappij voor Industriele Waarden v. A.O. Smith Corp., 532 F.2d 874, 875-76 (2d Cir.1976); Standard Chlorine of Delaware, Inc. v. Leonard, 384 F.2d at 308; Chatham Shipping Co. v. Fertex Steamship Corp., 352 F.2d 291, 294 (2d Cir.1965) (Friendly, J.); Rogers v. Schering Corp., 262 F.2d 180, 182 (3d Cir.), cert. denied sub nom. Hexagon Laboratories, Inc. v. Rogers, 359 U.S. 991, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959); Farr & Co. v. CIA. Intercontinental de Navegacion de Cuba, 243 F.2d 342, 344-45 (2d Cir.1957); Continental Grain Co. v. Dant & Russell, Inc., 118 F.2d 967, 968 (9th Cir.1941); Krauss Brothers Lumber Co. v. Louis Bossert & Sons, Inc., 62 F.2d 1004, 1005 (2d Cir.1933) (L. Hand, J.). But, when § 4 motions are brought in the midst of ongoing cases, the courts have been uncertain whether they should treat the resulting grants and denials as "final" under § 1291. Compare N.V. Maatschappij voor Industriele Waarden v. A.O. Smith Corp., 532 F.2d at 875 (grant of § 4 order appealable where "it constituted a final judgment in an independent proceeding"); Standard Chlorine of Delaware, Inc. v. Leonard, 384 F.2d at 308 ("orders compelling arbitration made in an independent proceeding under section 4 of the United States Arbitration Act would be appealable while those issued in the course of a continuing suit would not be"); Blount Brothers Construction Co. v. Troitino, 381 F.2d 267, 268 (D.C.Cir.1967) (denial of § 4 order interlocutory); Rogers v. Schering Corp., 262 F.2d at 182 (§ 4 order final where it "is the full relief sought" but not where § 4 order "is made in the course of a continuing suit for other relief"); Farr & Co. v. CIA. Intercontinental de Navegacion de Cuba, 243 F.2d at 344-45 (similar distinction), with Seaboard Coast Line Railroad Co. v. Trailer Train Co., 690 F.2d 1343, 1344 n. 1 (11th Cir.1982) (denial of § 4 motion in ongoing case held appealable); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 53 (3d Cir.1980) (grant of § 4 motion in ongoing suit held appealable); City of Naples v. Prepakt Concrete Co., 494 F.2d 511 (5th Cir.) (grant of § 4 order always appealable), cert. denied, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974).
 
 
 10
 In Langley, 707 F.2d at 3-5, we departed from earlier dicta, see USM Corp. v. GKN Fasteners, Ltd., 574 F.2d at 19; New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d at 188, and followed Second Circuit precedent. See, e.g., Standard Chlorine of Delaware, Inc. v. Leonard, 384 F.2d at 308. We specifically decided that "when federal suit on the underlying claim is pending, a district court's denial of an order compelling arbitration" is not final. Langley v. Colonial Leasing Co. of New England, 707 F.2d at 5. To have held otherwise would have led to piecemeal appeals, and it would have run counter to the congressional policy of encouraging arbitration. See, e.g., Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) (policy against piecemeal appeals); Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 184, 98 L.Ed. 168 (1953) (policy favoring arbitration). Moreover, such a holding would have determined the question of appealability by recourse to what often is little more than a matter of pure form--whether the plaintiff added a § 4 motion to the § 3 motion.
 
 
 11
 Although Langley concerned a denial of a § 4 motion, while here we have a grant, we see no meaningful distinction. Like a § 4 denial that is "embedded" in an ongoing case, an "embedded" § 4 grant typically has the same effect as the comparable § 3 decision. Here the effect on finality of the § 3 and § 4 decisions is indistinguishable: together, they preclude further consideration of the merits of the case until arbitration is concluded. At that point, unless the parties settle, the litigation in court will resume and the parties can appeal their legal questions after the court has issued a final decision. Appellants' fear that the district court's decision will somehow be both unreviewable and res judicata is misplaced. Unlike the state court decision in the case that appellants cite, Moses H. Cone Memorial Hospital v. Mercury Construction Corp., --- U.S. at ----, 103 S.Ct. at 935-936, the district court's decision here is not final and therefore unlikely to become "res judicata." See 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure §§ 4432-34 (1981); Restatement (Second) of Judgments § 16 (1982) (explaining remedy available where decision becomes res judicata before it becomes appealable). Finally, we note that the § 4 order in this case is not "final" as a "collateral order" under Cohen v. Beneficial Industrial Loan Corp., supra, for the reasons we set out in Langley --namely, that the order will be reviewable on appeal from a later final judgment.
 
 
 12
 In sum, considerations of logic and policy, the need for the uniform treatment of § 3 and "embedded" § 4 decisions, and the absence of practical necessity militate against "piecemeal" review here as they did in Langley. Hence, we follow the Second Circuit as to grants, as well as denials, of "embedded" § 4 orders. See, e.g., Standard Chlorine of Delaware, Inc. v. Leonard, 384 F.2d at 308. We conclude that the § 4 order in this case was not "final."
 
 
 13
 There is no other basis upon which the § 4 order might be appealed. A § 4 order is not an "injunction" under § 1292(a)(1). See Acton Corp. v. Borden, Inc., 670 F.2d at 381; Blount Brothers Construction Co. v. Troitino, 381 F.2d at 269; Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 85 (2d Cir.1961) (Friendly, J.), cert. denied sub nom. Dawson v. Lummus Co., 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); John Thompson Beacon Windows, Ltd. v. Ferro, Inc., 232 F.2d 366, 369 (D.C.Cir.1956); Wilson Brothers v. Textile Workers Union of America, 224 F.2d 176, 176-77 (2d Cir.), cert. denied, 350 U.S. 834, 76 S.Ct. 70, 100 L.Ed. 745 (1955). We departed from that view in Langley only (and explicitly) in the instance where a § 3 order in the same context would be appealable under Enelow-Ettelson. In that situation, we were willing to "treat" the § 4 order "as if" it were an injunction. To prevent a "practical anomaly," we said that where a § 3 stay would properly be before us, we would also review an "embedded" § 4 order. 707 F.2d at 5. But, we did not say that "embedded" § 4 orders were always to be treated as injunctions. Had we done so, of course, we would have had to grant review of the § 4 order in Langley, rather than deny it as we did.
 
 
 14
 In short, we believe that Langley, following the Second Circuit, governs appealability in this case. We therefore lack jurisdiction to hear this appeal; and it is
 
 
 15
 Dismissed.
 
 
 
 *
 Hon. Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation