**NPS COMMUNICATIONS, INC. and NPS Comnetwo, Inc., Plaintiffs-Appellants,**

**v.**

**The CONTINENTAL GROUP, INC., Defendant-Appellee.**

**No. 683, Docket 84–7964.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1985.

Decided April 29, 1985.

Diane S. Wilner, New York City (Charles Yablon; Howard D. Avrutine; Wilner & Associates, New York City, of counsel), for plaintiffs-appellants.

Helene D. Jaffe, New York City (Peter Gruenberger; Weil, Gotshal & Manges,

New York City, of counsel), for defendant-appellee.

Before MANSFIELD, PRATT and JOHN W. PECK of the Sixth Circuit United States Court of Appeals, sitting by designation, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Constance Baker Motley, *Chief Judge,* granting defendant's motions to stay plaintiffs' antitrust action pending arbitration of defendant's contract claims against plaintiffs and to compel arbitration of those contract claims, and denying plaintiffs' cross-motion to stay that same arbitration. We affirm.

Defendant The Continental Group, Inc. ("Continental") owns and operates a long-distance telephone system, and in February, 1982, Continental sold access to its system to plaintiffs NPS Communications, Inc. and NPS Comnetwo, Inc. (collectively referred to as "NPS"). NPS, acting as a middleman, then sold long-distance telephone services to retail customers. The contract between NPS and Continental gave Continental the right to terminate all services to NPS "immediately" if NPS's monthly payment was more than 30 days overdue, gave each party the right to terminate the agreement on 270 days' notice, and provided that the parties would arbitrate "[a]ny disagreement * * * with respect to the interpretation of this agreement or the obligation of the parties hereunder".

On July 30, 1982, Continental notified NPS that it would terminate the agreement on May 1, 1983, unless NPS agreed to new terms. Although a new agreement was never reached, and despite the fact that NPS stopped paying its bills from Continental after March 1983, Continental continued to provide services to NPS until August 3, 1983. According to Continental, at the time service was terminated NPS owed Continental $3.1 million in unpaid bills.

On November 1, 1983, Continental filed notice of its intention to arbitrate its contract claims for the unpaid bills. NPS countered by bringing an action in New York state court seeking a declaratory judgment that Continental had breached its contract with NPS, and by moving for a stay of the arbitration. Continental cross-moved to compel arbitration.

The state court motions were still pending when, on December 15, 1983, NPS brought the present antitrust suit in federal court alleging that Continental had violated the Sherman Act, 15 U.S.C. §§ 1, 2, when it conspired, contracted, or combined with others to willfully destroy NPS's business by cutting off access to Continental's telecommunications system. Continental then moved under the Arbitration Act for a stay of all proceedings pending arbitration, 9 U.S.C. § 3, and for an order compelling arbitration of the contract claims, 9 U.S.C. § 4. NPS cross-moved for an order staying arbitration.

In a memorandum decision filed August 30, 1984, the state court denied NPS's application and granted Continental's cross-motion to compel arbitration. *NPS Communications, Inc. v. The Continental Group, Inc.,* No. 91562/83 (N.Y.Sup.Ct. Aug. 30, 1984) (Schwartz, J.). In effect the state court deferred to federal authority. The decision explained that the state court "should not stay an arbitrable dispute by assessing the merits of a federal claim which is filed in another court. That action should be taken, if at all, by the Federal courts."

With the ball thus squarely in her "court", Judge Motley below decided to hold up on the antitrust case and to let the arbitration proceed. In an order filed November 2, 1984, she granted defendant's motions to stay the antitrust action pending arbitration of the contract claims and to compel arbitration of those contract claims. She also denied plaintiffs' cross-motion to stay arbitration.

On its appeal here, NPS contends that the district court should have stayed the arbitration because (1) the nonarbitrable

antitrust claims permeate the entire case and have a reasonable chance of success, (2) bifurcating the dispute into an arbitration and a court suit is inefficient and a waste of resources and (3) permitting the arbitration to proceed creates a risk of collateral estoppel consequences which might affect the antitrust action.

At the time of argument our decision was to have been guided by *N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.*, 532 F.2d 874 (2d Cir. 1976), in which we held that in cases where a complaint raises both contract claims subject to arbitration and nonarbitrable antitrust claims the court, in determining whether any of the claims should be stayed pending prosecution of the others, must consider relevant factors, including (1) the extent to which the antitrust claims permeate the entire case, making it difficult to resolve the contract claims without simultaneously resolving the antitrust claims, and (2) the strength or weakness of the respective claims.

Applying the *A.O. Smith* analysis here, we note that NPS's antitrust claims involve allegations of a conspiracy among Continental and other unnamed "actual and potential competitors" of NPS to drive it out of the telecommunications business. The contract claims, on the other hand, involve the nature and scope of a contract between NPS and Continental, their respective obligations under that contract, and whether or not those obligations were breached. On their factual and legal issues, the claims barely overlap; certainly the antitrust issues, which begin where the contract issues end, do not "permeate the entire case". *Cf. American Safety Equipment Corp. v. J.P. McGuire & Co.*, 391 F.2d 821, 827 (2d Cir.1968) (stay of antitrust claims pending arbitration should not be granted where the antitrust claim is one alleging that the agreement between the parties "itself was an instrument of illegality").

Moreover, we agree with the district court that NPS's antitrust claims are "conclusory and unsupported" and did not ap-

pear strong enough to warrant a stay of arbitration. *See S.A. Mineracao Da Trindade-Samitri v. Utah International, Inc.*, 745 F.2d 190, 196 (2d Cir.1984). NPS's vague, unspecific, and belated claims of antitrust violations are belied by the fact that Continental continued to negotiate with NPS and provide it with services from April through August 1983, even though NPS had ceased paying its bills to Continental. Thus, under the law of this circuit at the time of argument the district court's order had to be affirmed.

After the argument of this appeal the correctness of the district court's order was underscored by the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd*, —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). There the court held that "the Arbitration Act [9 U.S.C. §§ 1–14] requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* —— U.S. at ——, 105 S.Ct. at 1241. The Court noted, "By its terms, the [Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original). The Court further commented,

> The preeminent concern of Congress in passing the [Arbitration] Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute.

*Id.* —— U.S. at ——, 105 S.Ct. at 1242.

As an example of what it meant by "countervailing policy" the Court referred to *Wilco v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), in which a predispute agreement to arbitrate claims that arose under § 12(2) of the Securities Act of

1933, 15 U.S.C. § 77*l*(2) was held to be unenforceable because of specific language in § 14 of the Securities Act, 15 U.S.C. § 77n, declaring "void" any "stipulation" waiving the right to seek a judicial remedy. *Dean Witter Reynolds, Inc. v. Byrd,* —— U.S. at —— n. 1, 105 S.Ct. 140 n. 1. No similar federal law or other consideration would make the arbitration agreement in the present case void. The mere fact that NPS has advanced in federal court antitrust claims that cannot be subject to arbitration, *American Safety Equipment Corp. v. J.P. Maguire & Co.,* 391 F.2d 821, 828 (2d Cir.1968), does not, by itself, implicate any "countervailing policy" against compelling arbitration of the contract claims.

Finally, in deciding that district courts "shall" enforce arbitration agreements in these circumstances, the Supreme Court in *Byrd* considered and expressly rejected the three principal arguments advanced by NPS here: (1) that a stay should be granted when the nonarbitrable claims permeate or are intertwined with the arbitrable claims; (2) that bifurcation of the arbitrable and nonarbitrable claims creates an intolerable inefficiency, and (3) that permitting the arbitration to proceed would create an unacceptable collateral estoppel problem. In short, the rulings of the district court denying a stay of arbitration and compelling arbitration of the contract claims are consistent both with the law of this circuit as established in *A.O. Smith Corp.,* 532 F.2d 874, and with the rule in *Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), decided by the Supreme Court after the argument of this appeal.

As for the district court's order staying the antitrust action pending arbitration, NPS argues that the stay is unwarranted because it may delay court proceedings until NPS runs out of funds. However, NPS does not explain either why it would be any less expensive to proceed with the court proceedings simultaneously with the arbitration, or why arbitration should involve any major delay. This leaves us no reason to find any abuse of discretion on the part of the district court. *See Home Life In-*

*surance Co. v. Kaufman,* 547 F.Supp. 833, 835–36 (S.D.N.Y.1982); *Janmort Leasing, Inc. v. Econo-Car International, Inc.,* 475 F.Supp. 1282, 1293 (E.D.N.Y.1979).

The order of the district court is affirmed.