**APPLIED DIGITAL TECHNOLOGY, INC., an Illinois Corporation, Plaintiff-Appellee,**

v.

**CONTINENTAL CASUALTY COMPANY, an Illinois Corporation, Defendant-Appellant.**

No. 77–1956.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1978.

Decided May 17, 1978.

Stanley B. Block, Chicago, Ill., for defendant-appellant.

Lawrence H. Eiger, Michael J. Freed, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and PELL, and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from an interlocutory order of the district court enjoining the defendant-appellant. Continental Casualty Company (Continental), from proceeding with arbitration of its contract dispute with the plaintiff-appellee, Applied Digital Technology, Inc. (Adtech), pending resolution by the district court of antitrust issues involved in the litigation between the parties. Adtech's complaint included breach of contract and breach of warranty claims against Continental, a tortious interference with contract claim against Sybrandt, Inc. (Sybrandt) and Lockheed Electronics Corp. (Lockheed), and antitrust claims against Continental, Sybrandt, and Lockheed. In response to Continental's demand for and commencement of arbitration proceedings regarding the breach of contract claims,[1] Adtech sought and obtained the injunction from which Continental appeals. The basis for the district court's injunction was that the antitrust issues were not arbitrable and that they appeared to permeate the entire case such that an arbitrator would find it difficult to avoid determining antitrust issues in deciding the contract dispute.

Generally, claims under the antitrust laws are "of a character inappropriate for enforcement by arbitration." *American Safety Equipment Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 825–27 (2d Cir. 1968). Three major considerations have been articulated in support of this principle.

The first is the broad range of public interests affected by private antitrust claims. The Court [in *American Safety Equipment Corp., supra* ] recognized that "[a] claim under the antitrust laws is not merely a private matter", because private antitrust actions are an integral part of the effort of the antitrust laws "to promote the national interest in a competitive economy". 391 F.2d at 826. The Second Circuit noted that it is doubtful Congress could have "intended such claims to be resolved elsewhere than in

the courts". *Id.* at 827. The second is the complexity of the issues and the extensiveness and diversity of the evidence antitrust cases usually involve. These render antitrust claims "far better suited to judicial than to arbitration procedures". *Id.* The third is the questionable propriety of entrusting the decision of antitrust issues to commercial arbitrators, who "are frequently men drawn for their business expertise", when "it is the business community generally that is regulated by the antitrust laws". *Id.* at 827. *Cobb v. Lewis*, 488 F.2d 41, 47 (5th Cir. 1974). A corollary of this principle, the permeation doctrine, controls the present case. This doctrine, articulated more fully *infra*, states that if the antitrust issues permeate the entire case, the district court should proceed on the antitrust issues before the case is submitted to an arbitrator.

In this appeal, the parties are in apparent agreement that the permeation doctrine relied upon by the district court, is well-settled law. *See, e. g., Hunt v. Mobil Oil Corp.*, 410 F.Supp. 10, 25–26 (S.D.N.Y.1975), *aff'd* 550 F.2d 68 (2d Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977). The source of controversy, however, is whether the antitrust issues alleged by Adtech do, in fact, permeate the entire case. Resolution of this controversy requires that we look in some detail at the contract, its alleged breach, and other surrounding alleged facts.

Continental was engaged in a computer rental business in which it rented computers and computer software to insurance agents and agencies. Lockheed manufactured and supplied computers which it called SUE systems. Lockheed entered into a contract with Continental in which Lockheed agreed to sell SUE computers to Continental for use in its rental business. Sybrandt entered into a contract with Continental in which Sybrandt agreed to develop and maintain computer software for the SUE computers which Continental would

---

1. The Continental-Adtech contract contained an arbitration clause which stated that whenever a dispute arises under the contract which in the reasonable opinion of either party requires arbitration, such dispute shall be settled by arbitration.

market through its computer rental operation. Paragraph 22 of this Continental-Sybrandt agreement gave each party a right-of-first-refusal in the event that the other party desired to sell its interest in the agreement.[2]

Approximately three years after Continental entered into these agreements with Sybrandt and Lockheed, it decided to sell its computer rental business. It then entered into an agreement with Adtech for the sale of its business. The Continental-Lockheed and Continental-Sybrandt agreements were among the assets to be sold to Adtech. Before the sale to Adtech was consummated, Continental agreed to sell and sold its computer rental business to Sybrandt, allegedly pursuant to the right-of-first-refusal in the Continental-Sybrandt agreement. In the Continental-Adtech agreement, Continental agreed, as a condition precedent to closing the sale, to notify Sybrandt regarding the proposed sale and either obtain from Sybrandt a written waiver of Sybrandt's right-of-first-refusal under the Continental-Sybrandt agreement or provide Adtech with a written representation that Sybrandt had been notified and had failed to respond. Continental did neither. Furthermore, Continental had warranted that consummation of its sale to Adtech would not result in the breach of any other agreement to which it was a party.

In its complaint, Adtech alleged that Continental's actions constituted a breach of contract and a breach of warranty. In addition, however, it alleged antitrust violations on the part of Continental, Sybrandt, and Lockheed on the theory, *inter alia*, that they conspired to prevent Adtech from acquiring Continental's business and to prevent Adtech from competing with Lockheed and Sybrandt. Adtech also alleged antitrust violations on the part of Sybrandt and Lockheed on the theory that they conspired to and attempted to monopolize the rental

of computers and computer software to insurance agents and agencies.

In factual support of these antitrust claims Adtech alleged that shortly after the execution of the Continental-Adtech agreement, Continental advised Sybrandt and Sybrandt in turn advised Lockheed that Adtech had agreed to purchase Continental's business. To prevent this sale, Lockheed and Sybrandt agreed that Sybrandt would acquire Continental's business and that Lockheed would finance the acquisition and would indemnify Sybrandt for any liability with regard to the acquisition. Continental allegedly knew that Sybrandt was purchasing Continental's business merely as a nominee for Lockheed. Adtech further alleged that Lockheed and Sybrandt, acting through Continental, were the predominant suppliers of computers and computer software designed for the particular needs of insurance agents and agencies, and that their exclusion of Adtech from the market allowed them to acquire and maintain monopolistic control and thus to control prices.

With this backdrop of alleged facts, we can more easily evaluate the critical issue of permeation. Permeation, as articulated by the courts that have addressed it, is a somewhat elusive concept. Most courts have found permeation if an arbitrator could not easily separate the antitrust issues from the other arbitrable issues and could not easily decide the arbitrable issues without inquiry into the antitrust issues. *Cobb v. Lewis,* supra at 49–50. On the other hand, there is a reluctance to hold that the antitrust issues permeate the entire case unless the antitrust charges appear to have a relatively good chance for success. *Compare N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.,* 532 F.2d 874, 876 (2d Cir. 1976) (refused to stay arbitration because antitrust claims were not clearly established) *with Varo v. Comprehensive Design-*

2. Paragraph 22 of the Continental-Sybrandt agreement stated:

It is agreed that if either party desires to sell its interest in this Agreement, it will first offer to sell it to the other party at the price offered by any third party. Prior written

notice of such sale detailing the terms of the proposed sale must be furnished to the other party, and such party will have first option to purchase on the same terms and conditions, which option must be exercised within thirty (30) days of the receipt of such notice.

*ers, Inc.,* 504 F.2d 1103, 1104 (9th Cir. 1974) (stayed arbitration because plaintiffs' chances of establishing antitrust violations were "so strong").

In the present case, the pleadings set forth antitrust claims that, as pleaded, and upon supporting proof, have a reasonable chance of success. The more difficult question is the degree to which the antitrust and contract issues overlap and thus the degree to which an arbitrator would struggle to sidestep the antitrust issues in deciding the contract claims. Although an arbitrator could, to a limited extent, interpret the contract and determine whether it was breached without infringing on the antitrust issues, we foresee some areas which the arbitrator would have difficulty avoiding that also might require determinations critical to the antitrust claims. For example, the arbitrator, in deciding whether Continental breached, may well have to inquire into whether Continental in its communications with Sybrandt acted in good faith with respect to Adtech.[3] Such an inquiry would involve determinations regarding Continental's motives, knowledge, and intent when it sold to Sybrandt instead of Adtech, all of which could be critical to a disposition of the antitrust claims.

 Although we are of the opinion that the degree of permeation in this case is not overwhelming and that this is a close case,[4] we also are mindful that our standard of review is whether the district court abused its discretion. *A. & E. Plastik Pak Co., Inc. v. Monsanto Co.,* 396 F.2d 710, 716 (9th Cir. 1968). Under that standard we affirm the district court's decision to enjoin the arbitration on the basis of the permeation doctrine.

AFFIRMED.

3. Adtech alleged that Continental knew of and condoned an agreement between Sybrandt and Lockheed in which Sybrandt agreed to purchase Continental's business merely as a nominee for Lockheed. We intimate no view as to the legality of this arrangement, but merely raise it as an area in which the arbitrator might have to inquire in determining Continental's good faith.

4. We are also aware of the federal policy, strongly urged by Continental, favoring resolution of contract disputes by arbitration and the enforcement of such arbitration agreements. In our opinion, however, that favoritism must here yield to the more dominant policy.