BIG APPLE COOKIE COMPANY, et al., Plaintiffs,

v.

SPRINGWATER COOKIE COMPANY, et al., Defendants.

No. C-3-80-439.

United States District Court, S. D. Ohio, W. D.

June 19, 1981.

Thomas L. Czechowski, Stanley A. Goldsmith, Dayton, Ohio, for plaintiffs.

Charles G. Atkins, Joanne M. Schreiner, William R. Jacobs, Cincinnati, Ohio, for defendants.

RICE, District Judge.

The captioned cause came to be heard upon Plaintiffs' motion seeking an Order of the Court granting a stay of certain arbitration proceedings before the American Arbitration Association until this Court reaches final judgment on Plaintiffs' cause, herein.

In 1978, the corporate Plaintiff and corporate Defendant entered into a license and Franchise Agreement (with the corporate Plaintiff as licensee/franchisee) concerning the production and marketing of food products under the corporate Defendant's name.

Plaintiffs' cause in this Court alleges that Defendants' sale of the franchise to Plaintiffs, and Defendants' conduct pursuant to said Agreement, violate federal antitrust laws in various ways. Plaintiffs also allege, herein, that Defendants have breached said Agreement, that the Agreement was fraudulently induced, that Defendants have tortiously interfered with Plaintiffs' business relationships, and that, for all of the above reasons, the Agreement should be declared invalid.

Defendants have commenced an action against Plaintiffs in the Common Pleas Court of Hamilton County, Ohio, which, in substantial part, alleges that Plaintiffs have breached the aforestated Agreement. The judge of the Hamilton County Common Pleas Court has ordered that all claims in the state case be referred to arbitration, and it now appears that the commencement of arbitration proceedings is imminent. It is these arbitration proceedings which Plaintiffs' present motion seeks to have stayed.

Under the circumstances, it appears that Plaintiffs' entitlement to the requested stay turns on two questions:

(1) Have Plaintiffs demonstrated that the traditional prerequisites for preliminary injunctive relief are satisfied?

(2) Assuming Plaintiffs are entitled to a stay of arbitration under equitable principles, does this Court have authority to stay the specific arbitration proceedings at issue?

With respect to the first question, Plaintiffs interpose what has become known in other circuits as the "permeation doctrine." *See Applied Digital Technology, Inc. v. Continental Casualty Co.,* 576 F.2d 116 (7th Cir. 1978). *See also Varo v. Comprehensive Designers, Inc.,* 504 F.2d 1103 (9th Cir. 1974); *Cobb v. Lewis,* 488 F.2d 41, 47–50 (5th Cir. 1974); *Hunt v. Mobil Oil Corp.,* 410 F.Supp. 10, 25–27 (S.D.N.Y.1975), *aff'd* 550 F.2d 68 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977). As explained in these cases, the permeation doctrine is a corollary of the principle that antitrust claims are, by character, not appropriate for arbitration and, thus, subject only to judicial resolution. What the doctrine adds to this principle is the rule that if antitrust issues "permeate" contract or other related claims arising out of a commercial relationship, then, even though the related claims are subject to arbitration, the antitrust issues should be resolved in Court before any part of the case is submitted to arbitration. If "permeation" is found to exist as a matter of fact, the doctrine, in effect, supplies the necessary support for an order staying arbitration pending judgment on the antitrust claims.

Underlying the permeation doctrine is the pertinent recognition of the exclusivity of federal court jurisdiction in the determination of antitrust claims. Thus, although an arbitrator's decision directly upon an antitrust claim can have no preclusive effect

upon the subsequent assertion of such claim in federal court (i. e., because the arbitrator would lack the competent jurisdiction necessary for that form of *res judicata* ), there does exist a substantial danger that an arbitrator's decision on non-antitrust claims, within his jurisdiction, might indirectly infringe upon exclusive federal court antitrust jurisdiction by collaterally estopping relitigation of factual issues crucial to both the arbitrable (i. e., non-antitrust) claims and related antitrust matters. *See generally, Overseas Motors, Inc. v. Import Motors Ltd., Inc.,* 375 F.Supp. 499, 518–24 (E.D. Mich.1974), *aff'd* 519 F.2d 119 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). It is this indirect harm to a party's right to have his antitrust claims fully and fairly heard, in the first instance, in the only forum of competent jurisdiction (i. e., federal court), which the permeation doctrine seeks to avoid.

This Court notes that requests for stays of arbitration under the permeation doctrine are not uniformly addressed in the reported cases in terms of requests for preliminary injunctions. In some cases in which the stay is ordered, there is no mention of any of the traditional prerequisites for such equitable relief.

■ Nonetheless, the Court expects that this is because the "permeation doctrine" has come to be considered as an expression of the traditional requirements of equity in a shorthand form, applicable to the unique circumstances in which it arises, and *not* because an order staying arbitration is thought to require a greater or lesser showing than is necessary for a preliminary injunction against arbitration. Thus, in *Applied Digital Technology, supra,* the court affirmed a lower court's stay order without mentioning the traditional equitable re-

quirements, but it did refer to the matter as "the district court's decision to *enjoin* the arbitration" and also cited a preliminary injunction case in establishing the standard for review of such an order. Moreover, that the "strength" of the implicated antitrust claim often plays a part in determining whether "permeation" may be found, *compare N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.,* 532 F.2d 874 (2d Cir. 1976) *with Varo, supra; see generally, Applied Digital Technology, supra* at 118–19, suggests an inquiry parallel to an assessment of the moving party's "probability of success on the merits," which equity would ordinarily require before preliminary relief issues. Further, it cannot be gainsaid that the principle of nonarbitrability of antitrust claims, of which the permeation doctrine is but a corollary, reflects a recognition that the balance of *public interests* (an express equitable consideration) favors expedient judicial resolution of antitrust matters. *American Safety Equipment Corp. v. J.P. Maguire & Co., Inc.,* 391 F.2d 821, 826 (2d Cir. 1978) ("A claim under the antitrust laws is not merely a private matter.") Finally, the Court notes that the difficulties which arise from the collateral estoppel effect of an arbitrator's decision, on matters related to claims within the exclusive jurisdiction of the federal courts, have, on occasion, been termed as "serious, perhaps *irreparable* consequences." *Greater Continental Corporation v. Schechter,* 422 F.2d 1100, 1103 (2d Cir. 1970).[1]

■ In short, this Court concludes that a demonstration that a stay of arbitration is warranted under the "permeation doctrine" is implicitly equivalent to, and sufficient for a determination that the traditional equita-

---

1. *Schechter* involved arbitration of matters relating to claims under federal securities laws. The lower court's order denying a stay of arbitration (the lower court also refused to enjoin related state court proceedings, *see* 304 F.Supp. 325 (S.D.N.Y.1969)) was explicitly deemed *not* to constitute a denial of preliminary injunctive relief. However, this characterization appears to have been made solely for purposes of determining appealability under 28 U.S.C. § 1292(a).

Thus, although the appeal was dismissed on jurisdictional grounds, it is worthy of note that the appeals court strenuously urged the lower court to reconsider the matter, precisely because of the irretrievable change in circumstances resulting from the collateral estoppel effect of arbitration upon claims which fall most appropriately within the exclusive domain of the federal courts.

ble requirements for a preliminary injunction against arbitration have been satisfied.

■ The Court finds, at the present time,[2] that the pleadings in this case, including, by reference, the Agreement at issue, raise an antitrust claim and antitrust issues which are neither frivolous nor insubstantial and which do appear to have a "reasonable chance of success." *Applied Digital Technology, supra* at 119; *Cobb v. Lewis, supra* at 50. Further, upon examination of the pleadings in state court, this Court finds that the issues presently subject to arbitration are substantially intertwined with the antitrust issues, herein, and that the arbitration would have difficulty in resolving the arbitrable issues without making determinations critical to, or dispositive of the implicated antitrust claim. Specifically, the Court finds that the intent of the parties to the Agreement, and the types of conduct required of, or prohibited to them under the Agreement, are matters largely common to both the arbitrable issues and the antitrust claim. The Court, therefore, concludes that a stay of arbitration pending final judgment, herein, is warranted under the permeation doctrine.

The second question, above, regarding the Court's authority to stay the specific arbitration proceedings at issue, arises by virtue of 28 U.S.C. § 2283 which provides:

A Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in and of its jurisdiction, or to protect or effectuate its judgments.

It is the Defendants' contention that the arbitration in question, having been ordered by a common pleas court of this state, is an extension of "proceedings in a State court" which this Court is not permitted to enjoin.

It is self-evident that arbitration proceedings, *without more*, are not "proceedings in a State court." Arbitration is ordinarily nothing more than a private dispute resolution mechanism which predominantly occurs outside, *and in lieu of court proceedings*, pursuant to an agreement between the parties.

Ohio does provide a procedure, apparently followed by the common pleas court in this case, for court intervention to enforce arbitration agreements where one of the parties, thereto, refuses to submit to arbitration as agreed. Ohio Rev.Code Ann. § 2711.03. Under these circumstances, the question reduces to whether the arbitration at issue, which would normally be extrajudicial, becomes a part of "proceedings in a State court," for purposes of 28 U.S.C. § 2283, simply because the state court has ordered the parties to engage in such private arbitration proceedings as they had agreed they would do.

■ In *Roudebush v. Hartke*, 405 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972), the Supreme Court explained "that not every state court function involves 'litigation' or 'legal controversies.'" *Id.* at 20, 92 S.Ct. at 808. Thus, the exercise of a state court's authority, or the conduct of extrajudicial proceedings thereby initiated under the auspices of the state court, might not always be said to constitute "proceedings in a State court." What is required to constitute a nonenjoinable "proceeding" under section 2283 is the performance of "judicial inquiry" by the state court, meaning the kind of conduct which "investigates, declares, and enforces liabilities . . . ." *Id.* at 21, 92 S.Ct. at 808. *See Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908). In examining the Indiana election recount procedure presented to it, which procedure was initiated by petition

---

**2.** The findings and conclusions presently reached on these matters are tentative. Neither the state court pleadings nor the evidence indicating the imminence of arbitration have been submitted in a form which would allow this Court to take cognizance, thereof, or which provide a record sufficient to support the requested stay order. Upon submission of these

documents in certified or other proper evidentiary form (assuming that the true documents are as they presently appear and substantially as represented by the parties, either as set forth in memoranda or in correspondence with the Court) the findings and conclusions stated, herein, will then be considered final.

in an Indiana state court, the Supreme Court held that it did not involve a state court "proceeding" within the meaning of section 2283: "The state court's duties in connection with a recount may be characterized as ministerial, or perhaps administrative, but they clearly do not fall within this definition of a 'judicial inquiry.'" 405 U.S. at 21, 92 S.Ct. at 809.

This is also an apt characterization of the Ohio common pleas court's duties in connection with the enforcement of private arbitration agreements. There is no investigation, declaration, or enforcement *of liabilities* by the state court under Revised Code section 2711.03. On the contrary, the common pleas judge's inquiry is limited to the existence of a sufficient arbitration agreement, and to a determination that one or the other party thereto has not complied therewith. The matter concludes, with or without jury findings on these limited issues, with a "summary order" directing the parties to proceed to arbitration as agreed upon, or by dismissal of the petition. The state court judge's role in connection with the enforcement of private arbitration agreements is not enlarged, in a judicial-legal sense, by his issuing of discovery orders and the like.

Whether deemed ministerial, administrative, or something else, it is clear that the state court's duties in connection with the enforcement of arbitration agreements do not rise to the level of "judicial inquiry" and, thus, the arbitration proceedings in question are not an extension of, and do not involve "proceedings in a State court" which this Court might not be permitted to enjoin under 28 U.S.C. § 2283. Although the Ohio court's enforcement of an arbitration agreement cannot be termed identical to the state court-initiated recount procedure addressed in *Hartke*, there are striking similarities between the two (e. g., the Indiana recount commissioners were, and the Ohio arbitrators *might be* appointed by the respective courts). In other ways, the Ohio court's enforcement of an arbitration agreement is not unlike the various cases of state court "referrals" to extrajudicial decision-makers, in which federal court injunctions have been upheld, as cited with approval in *Hartke, supra,* at 22 n.16, 92 S.Ct. at 809.[3]

For the above reasons, Plaintiffs' motion seeking an order of the Court granting a stay of certain arbitration proceedings before the American Arbitration Association, until this Court reaches final judgment on Plaintiffs' cause, herein, is well taken and is sustained. Plaintiffs are given leave to perfect the record on this motion within seven (7) days from the date of this decision.[4] Within said time, Plaintiffs shall also submit a draft stay order appropriately implementing this decision, for the Court's consideration and adoption.

This Court, having expressly considered the question of bond, pursuant to Federal Rule of Civil Procedure 65(c), makes an express determination that no bond shall be

---

**3.** After an arbitration agreement has been enforced in the Ohio common pleas court—i. e., after the parties have been ordered to proceed therewith—the state court may again become involved in order to appoint an arbitrator, Revised Code § 2711.04, to enforce a subpoena issued by the arbitrator, Revised Code § 2711.06, to direct the taking of depositions as approved by the arbitrator, Revised Code § 2711.07, and to confirm, modify or vacate, and enter judgment upon the arbitrator's award, Revised Code §§ 2711.09–2711.12.

These additional duties are wholly independent of the state court's function in ordering arbitration in the first instance. They arise *only upon separate applications by the parties or the arbitrator* and may arise, in any event, *even if the parties have undertaken arbitration, pursuant to their agreement without initial*
*state court intervention.* Thus, whatever may be said regarding the extent of "judicial inquiry" involved in the court's performance of these additional functions *after arbitration has commenced or concluded,* it nonetheless remains clear that the arbitration proceedings, even if initiated upon "nonjudicial" court order, are not necessarily subject to the state court's supervision or participation, except as desired by the parties or the arbitrator, and, therefore, cannot be considered extensions of the "proceedings in a State court" any more than if the arbitration had been privately undertaken pursuant to agreement.

**4.** *See* note 2 *supra,* with reference to submitting the state court pleadings and facts supporting the claimed imminence of arbitration proceedings in proper form.

required to be posted by Plaintiffs. *Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir. 1978).