119 F.3d 393
 SIX CLINICS HOLDING CORPORATION, II, Plaintiff-Appellee,
v.
CAFCOMP SYSTEMS, INC., a Michigan corporation, and Ayana L.
Reaves, Independent Personal Representative of the
Estate of Lenza D. Reaves, Jr.,
deceased, Jointly and
Severally,
Defendants-
Appellants.
 No. 95-1560.
 United States Court of Appeals,
Sixth Circuit.
 Argued: June 12, 1997.
Decided: July 17, 1997.
 
 Maureen A. Darmanin (briefed), Clark, Klein & Beaumont, Detroit, MI, J. Walker Henry (argued and briefed), Michael F. Smith (briefed), Clark, Hill, Detroit, MI, for Plaintiff-Appellee.
 Drake D. Hill (briefed), Robert C. Zack (argued), Bassey & Selesko, Southfield, MI, for Defendants-Appellants.
 Before: KENNEDY, SILER, and MOORE, Circuit Judges.
 OPINION
 KENNEDY, Circuit Judge.
 
 
 1
 This case comes to us upon interlocutory appeal of the District Court's order granting plaintiff's motion for a preliminary injunction staying arbitration proceedings between the parties. We are asked to decide (1) whether the District Court lacked jurisdiction to grant the injunction under the Anti-Injunction Act, 28 U.S.C. § 2283, and (2) whether the issuance of the preliminary injunction was proper. For the following reasons, we AFFIRM.
 
 I. Facts
 A. Background
 
 2
 Defendant, Cafcomp, Inc. (Cafcomp), is an employee benefits administration company that provides comprehensive cafeteria plan services, including plan design and plan administration. A cafeteria plan permits employees to set aside pre-tax dollars to purchase certain "qualified benefits." See 26 U.S.C. § 125(d), (f). Lenza D. Reaves, Jr. ("Reaves"), who is now deceased, was the chief executive officer and president of Cafcomp.
 
 
 3
 Six Clinics Holding Corporation II ("Six Clinics"), a Michigan corporation almost wholly owned by the City of Detroit General Retirement System, provides physical and occupational therapy services and operates several Detroit area facilities. In 1992, Six Clinics, then known as American Rehabilitation Network ("ARN"), became interested in instituting a cafeteria plan for its employees and, on the recommendation of its insurance agent, it contacted Cafcomp.[1] In August 1992, Reaves met with officers to describe the services Cafcomp could offer their company. According to ARN, Reaves recommended either their "Salary Reduction Full Cafeteria Plan," or their "Pay+PLUS TM Plan." ARN decided to establish a Pay+PLUS TM Plan for its employees.
 
 
 4
 On October 9, 1992, ARN and Cafcomp entered into the "Cafcomp Systems, Inc. Pay+PLUS TM Administrative Services Agreement." The contract detailed the services Cafcomp would provide in connection with the "American Rehabilitation Network, Inc. Pay+PLUS Plan" (Plan). The agreement established an initial term of two years and contained an arbitration clause providing that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration." Joint Appendix at 13. The Plan began operation on January 1, 1993.
 
 B. Arbitration
 
 5
 In the early fall of 1993, ARN expressed concerns to Cafcomp regarding the legality of the Plan. Then, by letter dated November 22, 1993, ARN notified Cafcomp that it was terminating the administrative services agreement. On March 3, 1994, Cafcomp filed a demand for arbitration with the American Arbitration Association (AAA), alleging improper termination by ARN of the agreement. The action sought damages in excess of $250,000 for breach of contract and other state law claims.
 
 
 6
 On September 6, 1994, ARN filed an arbitration counterclaim alleging various violations of Cafcomp's fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. ARN apparently planned to argue to the arbitration panel that Cafcomp's operation of the plan had been in violation of the Internal Revenue Code[2] and that Cafcomp had violated its fiduciary duties under ERISA; therefore, as a plan fiduciary, ARN had to terminate the administrative services agreement in order to comply with its own fiduciary duties. ARN intended to make this argument both in the form of a defense to Cafcomp's breach of contract claim and in the form of the asserted counterclaim.
 
 
 7
 On January 19, 1995, Cafcomp filed a motion for summary disposition, seeking dismissal of both the ERISA counterclaims and defenses. Cafcomp argued that the arbitration panel lacked subject matter jurisdiction to hear the ERISA claims because, under 29 U.S.C. § 1132(e)(1), the federal courts have exclusive jurisdiction of the sort of claims alleged by ARN. In response, ARN began this action in federal court by filing a complaint on February 1, 1995, alleging that Cafcomp and Reaves[3] had violated their fiduciary duties under ERISA. Additionally, ARN asked the arbitrators to stay the arbitration until resolution of the federal suit.
 
 
 8
 On February 6, 1995, the arbitration panel dismissed the ERISA counterclaims, finding that it did not have jurisdiction to consider them. The panel also refused ARN's request to stay the arbitration. It appears from the record that the arbitration panel never issued a written order excluding the ERISA matters from the arbitration. Proposed orders submitted by the parties to the AAA demonstrate that the parties disagreed about the scope of the arbitration panel's ruling: Cafcomp's proposed order provided that the ERISA counterclaims and defenses would be excluded from the arbitration, while ARN's proposed order provided that only the counterclaims would be excluded. Despite correspondence to the arbitration panel regarding this dispute, the record does not indicate whether the panel ever resolved the matter. However, after making its rulings, the arbitration panel heard four days of testimony and scheduled the arbitration to resume in early May 1995.
 
 C. Federal Litigation
 
 9
 On April 11, 1995, ARN filed an action in the District Court seeking a stay of the arbitration proceedings pending resolution of the federal lawsuit. In the alternative, ARN requested that the Court order the arbitration proceeding to remain open prior to an entry of an arbitration award.
 
 
 10
 On May 1, 1995, the District Court heard oral argument on ARN's motion for a preliminary injunction. The court found that it had jurisdiction to enjoin the arbitration, because the arbitration was not a state court proceeding within the meaning of the Anti-Injunction Act, or, in the alternative, because ERISA expressly authorized an injunction. The court then decided to grant a preliminary injunction. While noting that it did not have to make a final ruling as to Cafcomp's fiduciary status, the District Court found that Cafcomp was a fiduciary.[4] In doing so, it relied primarily on statements found in the Summary Plan Description and Cafcomp's promotional materials. The District Court concluded that "the Court finds the movant is likely to prevail on the issue of ERISA claims in federal court, there would be irreparable injury to proceedings in the ... arbitration proceedings; that there would be harm to public interest. As the ERISA law states, ERISA matters should be dealt with in the federal court." Joint Appendix at 393.
 
 
 11
 On May 10, 1995, the District Court issued an order granting ARN's motion for a preliminary injunction "for the reasons stated on the Court record" and ordered that "the extrajudicial proceedings be stayed until a final determination by this Court on Plaintiff's ERISA claims against Defendants." This timely appeal followed. We have jurisdiction to review the District Court's interlocutory order pursuant to 28 U.S.C. § 1292(a)(1).
 
 II. Discussion
 A. Anti-Injunction Act
 
 12
 Cafcomp argues that the District Court lacked the authority to stay the arbitration proceeding, because the Anti-Injunction Act (Act) prohibited such an action. The Anti-Injunction Act provides:
 
 
 13
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 14
 28 U.S.C. § 2283. The jurisdiction of the federal courts and the availability of injunctive relief under the Anti-Injunction Act are questions of law subject to de novo review. See Gafford v. General Elec. Co., 997 F.2d 150, 155 (6th Cir.1993).
 
 
 15
 The Supreme Court has explained that in the Anti-Injunction Act, "[l]egislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 516, 75 S.Ct. 452, 455, 99 L.Ed. 600 (1955). In addition to the Act's express exceptions, however, courts have recognized that the Act applies only to certain "proceedings in a State court." Thus, we have held that the Act does not apply to state administrative proceedings. See American Motors Sales Corp. v. Runke, 708 F.2d 202, 204 (6th Cir.1983). The Supreme Court has held that the Act forbids the use of a federal injunction "to stay litigation in a state court" or, in other words, to interfere with the decision of a legal controversy in a state court. See Roudebush v. Hartke, 405 U.S. 15, 20, 92 S.Ct. 804, 808, 31 L.Ed.2d 1 (1972). In Roudebush, the plaintiff asked a federal court to enjoin a recount of an election for the United States Senate. The recount had been ordered by an Indiana state court. The Supreme Court held that the state court order was not the kind of state proceeding to which the Act applied. The Court explained that a nonenjoinable "proceeding" under the Act is that which involves the performance of a "judicial inquiry." See id. at 20-21, 92 S.Ct. at 808-09. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." Id. at 21, 92 S.Ct. at 809 (quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)). Since the duty of the state court in ordering the recount could be characterized "as ministerial, or perhaps administrative," it was not a "proceeding in State court" within the meaning of the Act. Id.
 
 
 16
 The question, then, is whether the arbitration proceeding involved in this case is a "proceeding in State court" within the meaning of the Act. We conclude that it is not. Arbitration is a private dispute resolution mechanism instituted pursuant to an agreement between the parties. It occurs predominantly outside, and in lieu of, court proceedings. Here, both Cafcomp and ARN voluntarily submitted to the arbitration. Additionally, the arbitration was governed by a private agreement to arbitrate disputes. We believe that under these circumstances, the arbitration proceeding involved in this case is not a "proceeding in State court" within the meaning of the Act.
 
 
 17
 Moreover, the policies behind the Act suggest that private voluntary arbitration is not the kind of proceeding the Act intended to implicate. The Supreme Court has explained that the purpose of the Act is to avoid "the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977); see also Mitchum v. Foster, 407 U.S. 225, 232-33, 92 S.Ct. 2151, 2156-57, 32 L.Ed.2d 705 (1972) ("The precise origins of the [Act] are shrouded in obscurity, but the consistent understanding has been that its basic purpose is to prevent 'needless friction between state and federal courts.' " (citation and footnote omitted)). Additionally, the Act is designed to ensure "the maintenance of state judicial systems for the decision of legal controversies." Roudebush, 405 U.S. at 20, 92 S.Ct. at 808. Staying a private voluntary arbitration proceeding does not implicate these concerns about comity and the maintenance of the state judicial system. Indeed, by choosing arbitration, the parties have decided not to submit their legal controversy to the state courts.
 
 
 18
 Cafcomp argues that we should follow the Ninth Circuit's opinion in Empire Blue Cross and Blue Shield v. Janet Greeson's A Place For Us, Inc., 985 F.2d 459 (9th Cir.1993), and hold that arbitration is a proceeding in state court. However, in Janet Greeson's, a state court had ordered the arbitration. See id. at 461. The Ninth Circuit determined that when a California state court orders arbitration, it performs more than an administrative or ministerial duty. See id. at 462. "Therefore, a federal court is without power to interrupt the proceedings by enjoining what the state court has commanded. " Id. (emphasis added). But see Big Apple Cookie Co. v. Springwater Cookie Co., 517 F.Supp. 367 (S.D.Ohio 1981) (holding that a state-court-ordered arbitration did not constitute a state court proceeding within the meaning of the Act, because the Ohio common pleas court's duties in connection with the enforcement of private arbitration agreements did not entail "investigation, declaration, or enforcement of liabilities" and thus did not rise to the level of a "judicial inquiry"). Thus, this case is distinguishable from Janet Greeson's, because the arbitration here was voluntary and private.
 
 
 19
 Cafcomp also argues that the arbitration is a proceeding in state court because the Michigan laws governing arbitration give the state courts the authority to investigate, declare, and enforce liabilities once an arbitration award has been rendered. For example, Michigan law provides that the state circuit courts have jurisdiction to render judgment on an arbitration award. See MICH. COMP. LAWS § 600.5025 (West 1987). Michigan regulations governing arbitration provide that a court may confirm an arbitration award, unless it determines that the award should be vacated, corrected, or modified according to governing principles. See MICH. R. CT. 3.602(H)-(L) (1997). Additionally, a state court's judgment pertaining to an arbitration award may be appealed. See id. 3.602(N). Finally, in order to collect an arbitration award, the prevailing party may have to institute post-judgment proceedings in state court. Thus, Cafcomp concludes, arbitration proceedings constitute the kind of judicial action that "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." Roudebush, 405 U.S. at 21, 92 S.Ct. at 809.
 
 
 20
 We find no merit in this argument. Although the state courts could become involved in the arbitration, the state courts in this case have yet to become involved in any manner. Indeed, the arbitration may never become a matter before the state courts of Michigan. For example, the losing party may not seek judicial review of the arbitration award and may simply pay the award in order to end the controversy. Simply because the State of Michigan has legally provided for state court involvement in arbitration proceedings, does not mean that all arbitration is a "proceeding in State court." We hold that where an arbitration proceeding is private and voluntary, and the state courts have not become involved, and may never become involved, in the proceeding, the Anti-Injunction Act does not apply. We do not reach the issue of whether arbitration ordered by a state court or affirmatively acted upon by a state court falls within the Anti-Injunction Act's definition of a state court proceeding. Because we hold that the arbitration in this case was not a state court proceeding, we need not decide whether ERISA expressly authorizes a federal district court to issue an injunction in these circumstances.
 
 B. Preliminary Injunction
 
 21
 We review a district court's decision to grant a motion for a preliminary injunction for an abuse of discretion. See Washington v. Reno, 35 F.3d 1093, 1098 (6th Cir.1994). A district court's findings of fact underlying its decision to grant a preliminary injunction are reviewed for clear error, and the legal conclusions underpinning its decision are reviewed de novo. In re Eagle-Picher Indus., Inc., 963 F.2d 855, 858 (6th Cir.1992). Because a trial court's decision to grant a preliminary injunction is accorded such great deference, we will disturb such a decision only if the district court "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." Washington, 35 F.3d at 1098.
 
 
 22
 The factors to be considered by a district court in deciding whether to grant a preliminary injunction are well-established: "(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction." Id. at 1099. A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue. See In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir.1985). For example, "a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, 'show[n] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.' " Gaston Drugs, Inc. v. Metropolitan Life Ins. Co., 823 F.2d 984, 988 n. 2 (6th Cir.1987) (quoting Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir.1982)).
 
 
 23
 The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. See Washington, 35 F.3d at 1099. No single factor will be determinative as to the appropriateness of equitable relief, see In re DeLorean Motor Co., 755 F.2d at 1229, and "the district court's weighing and balancing of the equities is overruled 'only in the rarest of cases.' " In re Eagle-Picher, 963 F.2d at 858 (quoting N.A.A.C.P. v. City of Mansfield, Ohio, 866 F.2d 162, 166 (6th Cir.1989)).
 
 
 24
 The nature and purpose of preliminary injunctions also inform the district court's analysis. As the Supreme Court has stated:
 
 
 25
 The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.
 
 
 26
 University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Therefore, the findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits. Id.
 
 1. Procedural Arguments
 
 27
 As an initial matter, we reject Cafcomp's argument that the District Court did not comply with Federal Rule of Civil Procedure 65(d). Rule 65(d) provides that "[e]very order granting an injunction shall set forth the reasons for its issuance." FED.R.CIV.P. 65(d). Although Cafcomp does not mention Rule 52(a), that rule requires that "in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its actions." FED.R.CIV.P. 52(a). The purpose of these rules is to provide an appellate court with a clear understanding of the district court's decision. See Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940); Glover v. Johnson, 855 F.2d 277, 284 (6th Cir.1988); Wynn Oil Co. v. Purolator Chem. Corp., 536 F.2d 84, 85 (5th Cir.1976). We have explained, however, that such findings are not an unwaivable jurisdictional requirement to appeal. See Urbain v. Knapp Bros. Manufacturing Co., 217 F.2d 810, 816 (6th Cir.1954). "[T]he failure of [a] District Court to comply with Rule 52(a) in respect of findings of fact does not demand reversal of the correct judgment of the District Court, if a full understanding of the issues could be reached without the aid of findings even though such findings would have been helpful." Id. at 815.
 
 
 28
 In its order granting the preliminary injunction, the District Court incorporated the reasons it stated orally at the preliminary injunction hearing. We disagree with Cafcomp's characterization of the District Court's oral opinion as devoid of all explanation. The transcript of the preliminary injunction hearing shows that the court made relevant findings of fact and conclusions of law. Importantly, the court referenced specific evidence supporting its conclusion that ARN was likely to succeed on the merits of its claim that Cafcomp was a fiduciary. Although the court did not provide specific findings for all of the factors relevant to the preliminary injunction determination, that was not necessary as long as findings pertaining to some of the factors were dispositive. See In re DeLorean, 755 F.2d at 1228. Additionally, we find that we can reach a full understanding of the issues without the aid of specific findings regarding each of the four preliminary injunction factors. See Urbain, 217 F.2d at 816. Therefore, we conclude that Cafcomp's procedural argument is without merit.
 
 2. Substantive Arguments
 
 29
 a. Success on the Merits
 
 
 30
 In its complaint, ARN alleges that Cafcomp and Reaves were ERISA fiduciaries with respect to the Plan, and that they violated their fiduciary duties in at least four ways: (1) by administering the Plan contrary to its terms, in violation of 29 U.S.C. § 1104(a)(1)(D)[5]; (2) by engaging in self-dealing in Plan assets, contrary to 29 U.S.C. § 1106(b)(1)[6]; (3) by acting in a transaction involving the Plan on behalf of a party whose interests were adverse to those of the Plan participants, in violation of 29 U.S.C. § 1106(b)(2)[7]; and (4) by receiving consideration from a party dealing with the Plan in connection with a transaction involving Plan assets, contrary to 29 U.S.C. § 1106(b)(3).[8] Key to the merits of ARN's claims against Cafcomp is whether Cafcomp is a fiduciary, because a cause of action for a breach of fiduciary duties can only be brought against a "fiduciary" within the meaning of ERISA. See id. §§ 1105(a), 1109(a).[9] As a fiduciary,[10] ARN may bring an ERISA cause of action against another fiduciary for various ERISA violations. See id. § 1132(a)(2), (3).
 
 
 31
 ERISA provides the following definition of a fiduciary:
 
 
 32
 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 33
 29 U.S.C. § 1002(21)(A). We have explained that Congress intended the term "ERISA fiduciary" to be interpreted broadly. See Brock v. Hendershott, 840 F.2d 339, 342 (6th Cir.1988)(" 'Thus, "fiduciary" should be defined not only by reference to particular titles, such as "trustee" but also by considering the authority which a particular person has or exercises over an employee benefit plan.' " (quoting Donovan v. Mercer, 747 F.2d 304, 308 (5th Cir.1984))).
 
 
 34
 Whether Cafcomp owed a fiduciary duty depends upon whether Cafcomp had discretionary authority with regard to the Plan. Cafcomp contends that it was not a fiduciary, because it performed only ministerial functions relating to the Plan. It relies on a Department of Labor (DOL) interpretative bulletin which explains that a person who has no power to make plan policies or interpretations, but who performs purely ministerial functions, is not a fiduciary. See 29 C.F.R. § 2509.75-8 Question D-2 (1996); Baxter v. C.A. Muer Corp., 941 F.2d 451, 455 (6th Cir.1991). Such ministerial functions include processing claims, applying plan eligibility rules, preparing employee communications material, preparing government-required reports, orienting new participants, calculating benefits, and making recommendations to others for decisions with respect to plan administration. See 29 C.F.R. § 2509.75-8 Question D-2 (1996). Cafcomp contends that ARN maintained complete and final authority with regard to all plan matters, while it performed the non-fiduciary functions listed in the DOL guidelines.
 
 
 35
 We conclude that there is enough evidence in the record to suggest that Cafcomp did act as a fiduciary with respect to the Plan. The Administrative Services Agreement between ARN and Cafcomp demonstrates that Cafcomp did in fact have discretionary authority over some matters. Specifically, the agreement listed numerous services that Cafcomp agreed to provide, including: legal documentation, including any updates and amendments "as Cafcomp deems necessary "; preparation of annual reports "as required in the judgment of Cafcomp "; and transmittals of summary plan descriptions "as required in the judgment of Cafcomp." Joint Appendix at 11 (emphasis added). While some of these activities involve non-fiduciary functions listed in the DOL guidelines, such as the preparation of government-required documents, Cafcomp appears to have had discretionary authority with regard to these functions. The agreement also provided that Cafcomp had the authority to amend the Plan.
 
 
 36
 Moreover, Cafcomp's promotional material indicates that it assumed the role of a fiduciary. These materials state that "Cafcomp contractually assumes the cost of maintaining the American Rehabilitation Network Flexible Compensation Plan Document. As Cafcomp deems it to be necessary, the Plan Document will be amended, re-stated or re-drafted to assure compliance." Id. at 224 (emphasis added). The legal work would be provided by Cafcomp's law firm. Id. There is no indication that Cafcomp would have to obtain approval from ARN for any changes to the Plan. The fact that Cafcomp had the discretion to amend the Plan in order to assure its compliance with the Internal Revenue Code and ERISA indicates that it had fiduciary responsibilities in this important area of plan administration.
 
 
 37
 With regard to ARN's claims of breach of fiduciary duties, we find that it is not necessary to evaluate ARN's likelihood of success on each one. For purposes of a preliminary injunction, it is enough that ARN has demonstrated a likelihood of success on the central issue of Cafcomp's status as a fiduciary. In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success. See Mason County Med. Ass'n v. Knebel, 563 F.2d 256, 261 n. 4 (6th Cir.1977). However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation. See In re DeLorean Motor Co., 755 F.2d at 1229. We conclude that ARN has raised serious questions going to the merits of its claims, sufficient to justify the issuance of a preliminary injunction. As the District Court noted, the conclusion that Cafcomp was a fiduciary with respect to the Plan is not a decision on the merits. See Camenisch, 451 U.S. at 395, 101 S.Ct. at 1834. We conclude that for purposes of deciding whether to issue a preliminary injunction, the District Court did not err on this ground.
 
 
 38
 b. Irreparable Injury
 
 
 39
 We also find that the District Court did not abuse its discretion in granting the preliminary injunction in light of the harm to Cafcomp if the injunction was not issued. In the arbitration proceeding, ARN sought to assert, both as defenses and as counterclaims, that Cafcomp had violated its fiduciary duties. ARN appears to have wanted all claims decided in the arbitration proceeding. Although the arbitration panel never issued an order explaining the scope of its grant of partial summary disposition to Cafcomp, Cafcomp had sought dismissal of both the ERISA counterclaims and defenses. Therefore, it appears that ARN would be unable to defend the breach of contract claim on the ground that Cafcomp violated its fiduciary duties if the arbitration were to proceed. Without a stay of the arbitration proceeding, ARN will be irreparably harmed, because it will be deprived of its main defense. Additionally, if the arbitration panel resolves the breach of contract matter before the federal courts decide the ERISA claims, ARN will be irreparably harmed, because it will be acting contrary to its own fiduciary duties, assuming its ERISA claims are meritorious. Cafcomp asserts that ARN can ask the arbitration panel to hold open the proceedings pending resolution of the ERISA claims in federal court; the panel, however, has already refused such a request from ARN. We conclude that the District Court did not err in finding that Cafcomp would be irreparably harmed unless a preliminary injunction was issued.
 
 
 40
 c. Harm to Others and Public Interest
 
 
 41
 Cafcomp does not contend that a preliminary injunction will harm it or others. Cafcomp does argue that the public interest is better served by no stay, because of the federal policy favoring arbitration. See, e.g., Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). However, ERISA also embodies a strong federal policy favoring federal judicial resolution of the kind of disputes involved in this case. Indeed, this court's decision in General Motors Corp. v. Buha, 623 F.2d 455 (6th Cir.1980), recognizes an overriding federal interest in federal adjudication of ERISA claims. In Buha, we held that ERISA clearly creates a federal right or remedy enforceable in a federal court of equity, and that ERISA could be given its intended scope only by the stay of a state court proceeding. Id. at 458-59. Cafcomp itself wanted the ERISA claims determined by a federal court. ARN is trying to accomplish just that. We conclude that the District Court did not err in finding that a preliminary injunction would not harm others and would be in the public interest.
 
 III. Conclusion
 
 42
 For the foregoing reasons, we AFFIRM.
 
 
 
 [1]
 On June 12, 1997, plaintiff-appellee, American Rehabilitation Network, filed notice of a Change of Name to Six Clinics Holding Corporation II. Since the corporation used the ARN name during the events that gave rise to this action and during the proceedings below, we will use that name in our opinion
 
 
 [2]
 The statutory provisions relating to cafeteria plans are in the Internal Revenue Code. See 26 U.S.C. § 125
 
 
 [3]
 Reaves was not a party to the arbitration
 
 
 [4]
 The court did not address whether Reaves was a fiduciary
 
 
 [5]
 Section 1104(a)(1)(D) provides:
 (a) Prudent man standard of care
 (1) Subject to section 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and--
 ...
 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of the chapter.
 29 U.S.C. § 1104(a)(1)(D).
 
 
 [6]
 Section 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not deal with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. 1106(b)(1)
 
 
 [7]
 Section 1106(b)(2) provides:
 A fiduciary with respect to a plan shall not--
 ...
 (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries[.]
 Id. § 1106(b)(2).
 
 
 [8]
 Section 1106 provides:
 A fiduciary with respect to a plan shall not--
 ...
 (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.
 Id. § 1106(b)(3).
 
 
 [9]
 The parties do not dispute that the Plan was governed by ERISA
 
 
 [10]
 The plan documents list ARN as the named fiduciary